STATE v. JAMES GROVES, et al.

*Indictment for Killing Cattle—Goats—Construction of Statute — Trial — Demurrer to Evidence — Instructions.*

1. The object of a trial being to ascertain the truth of the matter in controversy, the trial judge may, in his discretion, permit a witness to be recalled after the party has rested his case, or even after all the evidence has closed.

2. The word "cattle," as used in Section 1003 of *The Code*, embraces all domestic quadrupeds, including "goats."

3. Where, at the conclusion of the prosecution's case on a trial, the defendant demurs to the evidence, it is proper for the Court, upon overruling the demurrer, to refuse permission to the defendant to offer any testimony, and to charge the jury on the state of facts admitted by the demurrer.

4. When a defendant desires the benefit of a demurrer to the evidence, he should first introduce his testimony, and then ask an instruction that there is not sufficient evidence to go to the jury.

5. A mere omission to charge the jury on a particular aspect of the case is not ground for an exception unless an instruction is asked and refused.

INDICTMENT, under Section 1003 of *The Code*, for willfully and unlawfully killing cattle, tried before *Coble, J.*, and a jury, at Fall Term, 1896, of DUPLIN Superior Court.

At the trial, after the Solicitor had rested his case, and the defendant demurred to the evidence as being insufficient to go to the jury on a certain point, the State was allowed to recall a witness on such point, and defendants excepted. The defendants then offered to introduce testimony, but the court refused to permit them to do so, and charged the jury on the facts testified to by the State's witnesses.

STATE v. GROVES.

The defendants were convicted and appealed.

*Attorney General* and *Mr. Perrin Busbee*, for State.
*Messrs. Stevens & Beasley*, for defendants (appellants).

CLARK, J.: The court in its discretion promptly permitted the witness to be recalled, and indeed might have done so even after the evidence had closed. *Olive* v. *Olive*, 95 N. C., 485. The object of a trial is to a certain the truth of the matter in controversy. *The Code*, Sec. 1003, makes it a misdemeanor to willfully and unlawfully kill or abuse any "horse, mule, hog, sheep or other cattle," &c. The word "cattle" has a restricted sense which applies only to the bovine species, and also a broader meaning which includes all domestic animals. That it is used here in the latter and broader sense is apparent from the context, "horse, mule, hog, sheep or other cattle." Indeed, the broader sense is the more usual one. 3 Am. & Eng. Ency., 43. Worcester's definition, "a collective name for domestic quadrupeds, including the bovine tribe, also horses, asses, mules, sheep, goats and swine," was approved by this court in *Randall* v. *Railroad*, 104 N. C., 410. To same effect are the Standard, Webster and Century dictionaries.

In the Scriptures the word "cattle" ordinarily and usually embraces goats, notably in the contract between Laban and Jacob. Genesis, Ch. 30, v. 32.

In *Decatur Bank* v. *St. Louis Bank*, 21 Wall., 294, the word "cattle" is held to be broad enough to include even swine. In England the Stat. 9 Geo. II., Ch. 22, (commonly called the Black Act,) made it punishable with death without benefit of clergy "to maliciously and unlawfully kill any cattle." Under this it was held that the statute embraced domestic animals other than the bovine species,

as a mare, 2 East Pl. of Crown, 1074; *King* v. *Paty*, 2 W. Bl., 721, and "pigs" in *Rex* v. *Chapple*, 1 Crown Cases, 77.

The demurrer to the indictment therefore on the ground that "other cattle" did not include goats was properly overruled.

The defendant demurred to the evidence, and the Court, after overruling such demurrer, properly refused to allow the defendant to introduce further evidence, and charged the jury upon the state of facts admitted by the demurrer. *State* v. *Adams*, 115 N. C., 775, 784, and cases there cited. As stated in that opinion, if the defendant has evidence he should give the jury the benefit of it, and (unless his own evidence proves the case against him) it will be still open to him to ask an instruction that there is not sufficient evidence to go to the jury. But if he demurs on that ground the Court will not permit him to "take two bites at a cherry" by fishing for the opinion of the Court and afterwards introducing testimony if the demurrer is overruled.

There is nothing to show that the court was prayed and refused to charge that if the defendants killed the goats by mistake they would not be guilty. A mere omission to charge on a particular aspect of the case is not ground of exception, unless an instruction is asked and refused. *State* v. *Varner*, 115 N. C., 744, and numerous cases cited in Clark's Code, p. 382. Besides, there is no evidence set out tending to show that such state of facts was in proof, and the court in fact charged the jury that they must be satisfied beyond a reasonable doubt that the defendants willfully and unlawfully killed the goats in an enclosure not surrounded by a lawful fence, thus excluding the idea of a killing by mistake.

No Error.