KEITH & PROCTOR AMUSEMENT CO. v. BINGHAM, Police Com'r, et al.

(Supreme Court, Special Term, New York County. January 22, 1908.)

1. SUNDAY—REGULATION—SHOWS—STATUTES.

Pen. Code, § 265, prohibits all shooting, hunting, fishing, playing, horse racing, gaming, or other public sports, exercises, or shows, and all noise disturbing the peace of the day, on Sunday; and section 277 provides that the performance of any tragedy, comedy, opera, ballet, farce, negro minstrelsy, negro or other dancing, wrestling, boxing, sparring contest, trial of strength, or any part or parts therein, or any circus, equestrian or dramatic performance or exercise, or any performance or exercise of jugglers, acrobats, club performances, or rope dancers, on Sunday, shall constitute a misdemeanor. Held, that section 265 relates only to public outdoor exhibitions, and that the word "shows," as there used, did not include a combination lecture and moving picture show, accompanied by musical selections, in a theater on Sunday.

2. SAME—IMMORAL PICTURES.

> That the exhibition of pictures in a theater on Sunday did not constitute a violation of Pen. Code, § 265, prohibiting exercises and shows on Sunday, did not deprive the police of the right to suppress the exhibition of pictures of an indecent character tending in any way to corrupt morals; it being the duty of the police to suppress such shows on every day of the week.

Action by the Keith & Proctor Amusement Company against one Bingham, as police commissioner of the city of New York, to restrain the police authorities of the city from closing or attempting to close plaintiff's theater, located in such city, etc., on Sundays. On application for continuance of a preliminary injunction pendente lite. Application granted.

Maurice Goodman, for plaintiff.

F. K. Pendleton, Corp. Counsel, and Terence Farley, Asst. Corp. Counsel, for defendant.

DAVIS, J. This action is brought to restrain the police authorities of New York City from closing or attempting to close on Sundays the theater of the plaintiff, located at No. 112 East 125th street. The plaintiff also asks that the defendants be restrained from entering the theater except for the purpose of making such inspection as is lawful, and except for the purpose of preserving the peace or to execute warrants of arrest of persons on the premises, or other lawful warrants, or for the purpose of making an arrest in good faith for the commission of a felony, or an arrest for a misdemeanor committed in their presence. Finally, plaintiff asks for an injunction restraining the police from interfering with the use of this theater by the plaintiff on any Sunday for the presentation therein of lectures, etc., and the sacred or educational pictures connected therewith, provided that such lectures and pictures are presented in such a manner as not to disturb the public peace or amount to a serious interruption of the repose and religious liberty of the community. The plaintiff has obtained a temporary injunction, with an order to show cause why it should not be continued during the pendency of the action.

The question now before the court is whether this injunction should be continued during the pendency of the action. The production which the plaintiff seeks to protect from police interference on Sundays consists of a so-called sacred lecture, illustrated by moving pictures, accompanied by scriptural readings and music claimed to be appropriate to the subject presented. If this production were simply a lecture, it would be lawful, under the ordinance approved by the mayor on December 19, 1907, so long as it is given in such a manner as not to disturb the public peace or amount to a serious interruption of the repose and religious liberty of the community. But, obviously, it is not merely a lecture. It is a combination of a lecture and a moving picture show. It is a moving picture show, explained by a lecturer, and made more interesting by music. In his brief the plaintiff's attorney in effect concedes that the entertainment is really a moving picture show, and that the only question before the court is whether such a show is illegal. He claims that there is no provision of law forbidding such a

show. On the other hand, the defendant expresses the view that section 277 of the Penal Code prohibits plaintiff's show. His real and most serious contention, however, is that it offends the provisions of section 265 of the Penal Code; and the meaning of that section is the real issue before the court. That section reads as follows:

"Sec. 265, Public Sports. All shooting, hunting, fishing, playing, horseracing, gaming or other public sports, exercises or shows, upon the first day of the week, and all noise disturbing the peace of the day, are prohibited."

The defendant contends that the word "show," as used in this section, should be given its broadest meaning. If thus interpreted, it would include the plaintiff's show. It would embrace shows of every description. On the other hand, the plaintiff claims that the word "show" must be given a restricted meaning, so restricted as to include only such shows as are presented out of doors in the public view. The Sunday laws are found in sections of the Penal Code numbered 259 to 277, both inclusive. These sections constitute a single chapter, and furnish a comprehensive and consistent body of law for securing the repose and religious liberty of the community on the first day of the week. For instance, this chapter covers the subject of Sunday labor, sports, trades, manufactures and mechanical employments, public traffic, service of legal process, compelling adoption of a form of belief, preventing performance of religious acts, disturbing religious meetings, processions and parades, and theatrical performances. Confining our consideration to the question of prohibited shows, it is evident that the Legislature aimed at preventing those shows which in its opinion disturbed the repose of the community. Its object is attained under sections 265 and 277 of the Penal Code. The latter section obviously refers to indoor entertainments only. This is apparent from the penal clauses of the section. They impose a penalty upon the owner or lessee of any building, etc., in which the prohibited show is given, and declare a forfeiture of the license of any manager using the building for such a purpose. And likewise it is apparent that the moving picture show in the case at bar does not come within the purview of this section. Many performances are specifically prohibited therein, but under none of them can we properly classify moving pictures.

As these pictures are not condemned by section 277, it remains to determine whether section 265 includes them. I am of the opinion that the latter section applies to shows exhibited outdoors only. It follows, then, that the Sunday law prohibits all shows of whatever kind when exhibited outdoors in the public view and only certain specified shows when exhibited indoors, the former by section 265 and the latter by section 277. This interpretation is reasonable and natural, and gives full effect to both sections. It is consistent with what we must assume to have been the legislative intent not to have one section of the law cover matters already fully treated in another section of the same chapter. If, as claimed by the defendant, the word "show" in section 265 covers all shows, whether indoor or outdoor, section 277 becomes superfluous and unnecessary, because then the various indoor shows therein specified would be embraced also within section 265 and prohibited by it. We are not at liberty to

adopt a construction leading to such a result. Furthermore, in seeking the meaning of the words "other public  *  *  *  shows," as used in section 265, we should apply the ejusdem generis canon of statutory construction. Thus interpreted, these words necessarily refer only to those shows which are outdoor in public view. The section first enumerates shooting, hunting, fishing, playing, horse racing and gaming. These acts all have the common attribute of being outdoor and within public view. Under this method of construction the succeeding words, "or other public sports, exercises, or shows," must have the same attribute and be deemed to refer only to outdoor shows. "The rule which usually obtains in cases of this kind is that, where general words follow specific words designating certain special things, the general words are to be limited to cases of the same general nature as those which are specified." People v. Richards, 108 N. Y. 139, 15 N. E. 375, 2 Am. St. Rep. 373.

This section has been recently under consideration by Mr. Justice Greenbaum in the Case of Eden Musee American Company, 108 N. Y. Supp. 200, and his exhaustive opinion just handed down, embodying the results of his study of this section, confirms me in the conclusions reached herein. The views expressed herein are not in conflict with those of Mr. Justice O'Gorman in the Hammerstein Case, 108 N. Y. Supp. 197. That case was decided under section 1481 of the charter, which appears to have been superseded since by a corporation ordinance passed December 17, 1907, and which does not cover the subject of moving pictures.

Of course, the views expressed in this opinion have no reference to any exhibition of pictures of a salacious or otherwise indecent character, or which tend in any degree to corrupt morals. It will be the duty of the police to suppress such shows on every day of the week. In the interest of public order, and to avoid the bewilderment and confusion in police administration which necessarily accompanies the existence of numerous injunctions against the department, it would be desirable to deny the motion for an injunction, especially where the court is convinced, as in this case, that the police would be guided by the court's statement of the law and refrain from molesting the plaintiff in his lawful business. But as it is important to have an appellate tribunal pass upon the questions involved because of the conflict of views on this subject in different departments, the motion to continue the injunction pending the action is granted.