(August 5, 1910.)

## In re G. W. HULL, Habeas Corpus.

### [110 Pac. 256.]

SUNDAY REST LAW—PUBLIC AMUSEMENTS—SCENIC RAILWAY.

#### (Syllabus by the court.)

1. Section 6825 of the Rev. Codes provides that "It shall be unlawful for any person or persons in this state to keep open on Sunday . . . . any theater, playhouse, dance-house, racetrack, merry-go-round, circus or show, concert saloon, billiard or pool room, bowling-alley, variety hall, or any such place of public amusement. . . . . "

2. *Held*, that in order to bring a public amusement not specifically enumerated by the statute (sec. 6825, Rev. Codes), under the general language of "any such place of public amusement," the likeness or similarity must exist in something other than the mere fact that it is a "public amusement," and must in a general way correspond to the amusements specified.

3. What is designated as a "scenic railway," being a railway constructed of rails and on which cars are run for the purposes only of amusement, where the track is elevated a considerable distance above the ground at the place of beginning and is built on an incline with intervening elevations, and the cars are propelled by the force of gravity, is not "such place of public amusement" as a "merry-go-round," and is not prohibited from being kept open on Sunday by the provisions of sec. 6825 of the Rev. Codes.

4. An amusement that is not *per se* unlawful or criminal and is not in itself immoral or dangerous or detrimental to the public health will not be included within the provisions of the statute prohibiting certain specified public amusements and other like and similar amusements on Sunday, unless the same is forbidden by the statute either in direct terms or by clear implication.

Original action in this court for writ of *habeas corpus*. Petitioner was convicted in the justice's court of Boise precinct, Ada county, of a violation of the Sunday rest law in unlawfully keeping open a place of public amusement, to wit, a scenic railway, on Sunday. Hearing had on return to writ. Prisoner discharged.

Richards & Haga, and P. E. Cavaney, for Petitioner.

The defendant's contention is that he has not violated sec.. 6825, Rev. Codes, commonly known as the Sunday rest law,. for the reason that the wording of the law plainly and clearly shows that there is nothing in said law whatsoever that refers: to such a place of public amusement as the said scenic railway, and that the keeping open of said amusement does not. come within the inhibition of the said Sunday rest law. Penal statutes should be strictly construed. (2 Lewis' Sutherland, Stat. Const., sec. 501; *Ex parte Bailey*, 39 Fla. 734, 23 So.. 552; *State v. Woodruff*, 68 N. J. L. 89, 52 Atl. 294.)

"The doctrine of '*ejusdem generis*' is applied in all cases. where there is doubt as to the intention of the legislature, and, as a rule, statutory construction is stated to be that where general words follow particular ones in a statute, the general. words will be limited in their meaning or restricted to things. of like kind and nature with those specified." (*State v. Prather*, 79 Kan. 513, 131 Am. St.. 339, 100 Pac. 57, 21 L. R. A., N. S., 23; *Ex parte Neet*, 157 Mo. 527, 80 Am. St. 638, 57 S. W. 1025; *Commonwealth v. Burrell*, 7 Pa. 34; *People· v. Hochstim*, 36 Misc. Rep. 562, 73 N. Y. Supp. 626, 634;. *In re Hastings & Ward* (Pa.), 15 Phila. 420.)

"Confining our consideration to the question of prohibited' shows, it is evident that the legislature aimed at preventing· those shows which in its opinion disturbed the repose of the· community." (*Keith and Proctor Amusement Co.. v. Bingham*, 108 N. Y. Supp. 205; *United States v. Buffalo Park,..* 16 Blatchf, 189, Fed. Cas. No. 14,681; *St. Louis Agri. & Mech. Assn. v. Delano*, 108 Mo. 217, 18 S. W. 1101.)

D. C. McDougall, Attorney General, J. H.. Peterson, and' C. P. McCarthy, for Defendant.

It is impossible to name specifically in an act all' existing· forms of public amusement, and it is impossible to. name specifically all variations and modifications of existing. amuse-· ments and. similar amusements which may be invented in the future. It is therefore clear that the legislature. in. dealing·

with either business or amusement must use general language designating a general class or genus.

Conceding that the general rule of *ejusdem generis* is here applicable, a scenic railway, such as described, is wholly within the letter and intent of the statute. Among those things specifically enumerated are racetracks, merry-go-rounds and bowling-alleys. These devices are closely analogous and of the same genus and general nature of the things enumerated. (*State v. Groves,* 119 N. C. 822, 25 S. E. 819; *Randolph v. State,* 9 Tex. 521; *Chicago Union Traction Co. v. Chicago,* 199 Ill. 484, 65 N. E. 451, 59 L. R. A. 631.)

The classification in this statute is very broad, varying from the comparatively quiet performance of theaters to the noisy and boisterous amusements of racetracks and merry-go-rounds. If the general words refer to the genus or class, the genus in this case must be admitted to be very broad, and where the classification is so broad as to be bordered on the one side by theaters and on the other by racetracks and merry-go-rounds, can it be seriously denied that a scenic railway is included? Though the device were not of the same general class and genus, "This rule [*ejusdem generis*] can be used only as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intentions or confining the operation of the statute within narrower limits than were intended by the lawmaker." (2 Lewis' Sutherland, Stat. Const., sec. 437, and cases there cited:; *Willis v. Mabon,* 48 Minn. 140. 31 Am. St. 626, 50 N. W. 1110, 16 L. R. A. 281; *State v. Holman,* 3 McCord (S. C.), 306; *Webber v. Chicago,* 148 Ill. 313, 36 N. E. 70.)

AILSHIE, J.—The petitioner was convicted in the justice's court of Boise precinct, Ada county, of violating sec. 6825 of the Rev. Codes, known as the "Sunday rest law," and was sentenced to pay a fine of $50 and to be imprisoned in the county jail for a term of ten days. The specific offense charged against the petitioner was that of unlawfully keeping open a place of public amusement known and designated as a "scenic railway."

This case was submitted on a stipulation of facts, from which it appears that on July the 24th, the same being Sunday, the petitioner kept open his place of amusement and admitted such persons as applied for admission, and operated his cars and furnished rides to those who paid the fee of ten cents. It seems that the Natatorium Park Amusement Company, Ltd., is a corporation organized under the laws of this state, and that the petitioner, G. W. Hull, is its general manager, and has control and management of its property. This so-called scenic railway consists of a track several hundred feet long on which wooden cars are run at a high rate of speed. The cars are elevated by means of a cog-wheel attachment, so that the track is a considerable distance from the ground at the highest place. It is built on a general incline, with slight elevations intervening from that point to the end of the track, where it comes to the surface of the ground near the place of starting. These cars run from the highest point by force of gravity, and are operated purely as a matter of amusement to those who take the rides and incidentally for the pecuniary benefit of the proprietors of the park. Ten cents' worth of amusement via this scenic railway lasts about two minutes, so the record says. The tourist may then purchase a new ticket or forego a further view of the scenery.

The state contends that this comes within the provisions and purview of sec. 6825 of the Rev. Codes. That statute provides among other things as follows: "It shall be unlawful for any person or persons in this state to keep open on Sunday . . . . any theater, playhouse, dance-house, race-track, merry-go-round, circus or show, concert saloon, billiard or pool room, bowling-alley, variety hall, or any such place of public amusement. . . . . "

It is conceded that this does not come within the list of *enumerated* amusements. But the state insists that it is analogous and similar to a "merry-go-round," and is consequently prohibited by the phrase "or any such place of public amusement." It is argued on behalf of the state that under the doctrine of *ejusdem generis* a scenic railway such as above

described is prohibited on the ground that it falls within the prohibition of *like, similar and kindred amusements* to the ones specifically prohibited. The petitioner on the other hand argues equally as earnestly and eloquently that under the doctrine of the same rule the amusement he is conducting is not included within the prohibition of the statute.

We enter upon the consideration of this statute fully conscious of the duty which rests on the court to ascertain what the law is on the subject, and to declare it as we find it rather than as we think it ought to have been. We have no right to add to or take from the law. The task is sometimes extremely difficult to ascertain the purpose or intent of the lawmakers, but that difficulty does not relieve a court of the undertaking.

It is useless to undertake to review or analyze the authorities cited by counsel in this case, for the reason that none of them construe a statute in the language of ours, and the only benefit we derive from them is such as we have gathered from the analogy of reasoning employed. The following are the principal cases to which our attention has been called and that we have given examination: Cited by petitioner: *Ex parte Neet,* 157 Mo. 527, 80 Am. St. 638, 57 S. W. 1025; *Keith & Proctor Amusement Co. v. Bingham,* 108 N. Y. Supp. 205; *State v. Prather,* 79 Kan. 513, 131 Am. St. 339, 100 Pac. 57, 21 L. R. A., N. S., 23.

By the state: *State v. Groves,* 119 N. C. 822, 25 S. E. 819; *Randolph v. State,* 9 Tex. 521; *Chicago Union Trac. Co. v. Chicago,* 199 Ill. 484, 65 N. E. 451, 59 L. R. A. 631; *Willis v. Mabon,* 48 Minn. 140, 31 Am. St. 626, 50 N. W. 1110, 16 L. R. A. 281; 2 Lewis' Sutherland on Stat. Const., sec. 437; *State v. Dolan,* 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259.

It is difficult to tell the exact theory on which the lawmakers drafted this section of our statute. The amusements enumerated and prohibited are not similar or kindred amusements. There is apparently nothing common to all of them except that they are all *public amusements.* They are not all immoral amusements nor are they all noisy and boisterous

amusements. The racetrack may be said to be immoral in that it is a place of betting and gambling, and so it may be said that the "concert saloon" and the "variety hall" are classes of amusement at least suggestive of immorality. On the other hand, the merry-go-round is not an immoral amusement. It may also be said that there is nothing especially immoral about the circus or show, the billiard hall nor the bowling-alley, and yet these are prohibited on Sunday.

When we come, therefore, to ascertain the moving purpose of the lawmakers in enumerating the amusements that should be prohibited, we fail to find a reason that is common to all of the amusements enumerated or that could be applied to each of them. It is patent that the legislature did not intend to absolutely forbid and prohibit *all* public amusements on Sunday. If they had so intended they would undoubtedly have said so in so many words. On the contrary, they immediately follow the specific amusements enumerated with the words *"or any such place of public amusement."* The word "such" has a very definite and distinct meaning. It is defined by the lexicographers as: "Of that kind; of the same or like kind; identical with or similar to something specified or implied; . . . . being the same as what has been mentioned or indicated; being the same in quality; having the quality specified, etc."

Now, it is evident that the legislature intended to prohibit any other public amusement not enumerated which could be distinctly classed as *like* or *similar* to those specified, but since all are alike in that they are *public amusements,* the similarity must exist in something else other than the mere fact of amusement. The merry-go-round needs no description, for, on account of its popularity, it must be known and understood by all. There is a similarity between the merry-go-round and this scenic railway in that each furnishes a ride, but the character of the ride is apparently very different on the scenic railway from that of the merry-go-round. One of the distinguishing features of the merry-go-round is the inspiring and animating sacred and patriotic music which it furnishes and which tends to make it more public than it

otherwise might be. This the scenic railway does not seem to have. The scenic railway is by force of necessity obliged to make up in scenery for the loss of horses, giraffes, zebras, elephants and other beasts of burden that add interest and variety to the merry-go-round. Riders of animals of the same species are enabled to quietly converse together while they enjoy the music, but on the scenic railway there is nothing to be done but to hold on, exercise the muscles, and view the scenery.

The merry-go-round was evidently prohibited on account of the noise it makes and the fact that it is usually located in the midst of the residence portion of the city, town or village. So far as the record shows, this scenic railway is not attended by the noise that characterizes the merry-go-round. Again, the character of the amusement under consideration is such as to render it necessary that it have a great deal more room than the merry-go-round requires, and as a consequence it must be located outside of the principal residence portion of the community, and will therefore be farther removed from residences generally and from places of public worship.

This class of legislation is upheld solely as an exercise of the police power of the state. The prohibition of public amusements on Sunday must therefore rest on the theory that it is necessary either for the protection of the public morals, the public health or the public peace and safety. (*Mullen & Co. v. Moseley,* 13 Ida. 457, 121 Am. St. 277, 90 Pac. 986, 12 L. R. A., N. S., 394, 13 Ann. Cas. 450; *State v. Dolan,* 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259.)

This amusement is not *per se* unlawful or criminal, nor is it immoral or dangerous or detrimental to the public health. It is apparently a wholesome, innocent outdoor amusement. In order to prohibit such an amusement we ought to find the prohibition within the statute either in positive terms or by clear implication. No such means of amusement existed in this state at the time of the passage of this act, and if this is to be prohibited under the statute, it must be by reason

of it being "such a place of amusement" as some one of those specifically enumerated. We do not feel that we would be justified in extending the statute to cover this means of amusement and thereby make its maintenance and operation a crime. If we should do so it would only be a short step to include the automobile or street-car that is operated on Sunday for the accommodation of those who desire a pleasure ride. If the legislature should see fit to close such places of amusement as this on Sunday, it may do so, but until that time we think no serious harm can be done to the morals or health of the people by permitting an amusement like the one in question to keep open on Sunday. The chief objection to most of the public amusements and resorts is not to the amusement feature itself, but to the habit of the proprietors of such places adding to them immoral, corrupting or boisterous features or attendants until the public conscience rebels against them and demands a total cessation. That will be the result, with this amusement if it is not run orderly and decently.

We conclude that a "scenic railway" such as that described in the record in this case does not come within the prohibition of the statute. The petitioner should be discharged, and it is. so ordered.

Sullivan, C. J., concurs.