(February 23, 1916.)

## STATE, Appellant, v. H. D. MORRIS, Respondent.

[155 Pac. 296.]

MOVING PICTURE SHOW—CONSTITUTIONAL LAW—RELIGIOUS LIBERTY—STATUTORY INTERPRETATION.

1.   The phrase "moving picture show" as used in sec. 6825, Rev. Codes, as amended by chap. 99, Sess. Laws 1911, p. 342, means a place where motion pictures are exhibited for the purpose of public amusement and entertainment.

2. When words have no technical meaning or application, or when they have not been used or employed in a technical sense in the statute, they should be given their ordinary significance as popularly understood.

3. The constitution of Idaho guarantees to each inhabitant of the state the inalienable right to decide for himself as to the wisdom and righteousness of his mode of worship.

4. To hold that the use of a moving picture machine on Sunday for the purpose of illustrating a sermon, or religious lecture, is keeping open or operating a moving picture show in violation of the statute, would be to improperly invoke the police power of the state, for, thus construed and in that particular, it would bear no real or substantial relation to the public health, the public morals, the public peace or the public safety. Such a construction would bring the statute into conflict with sec. 4, art. 1, and sec. 19, art. 21, of the constitution, guaranteeing religious liberty to the inhabitants of Idaho.

5. When a statute is susceptible of two interpretations, one making it constitutional and the other unconstitutional, the former must be adopted.

[As to religious belief as affecting qualifications of person as guardian, see note in **Ann. Cas. 1915C, 361.**]

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Chas. P. McCarthy, Judge.

Respondent was convicted in the justice's court of keeping open and operating a moving picture show on Sunday. He appealed to the district court and was acquitted. The state appeals. *Affirmed.*

R. L. Givens and E. P. Barnes, for Appellant.

The overt violation of a Sunday rest law or the act itself being once established, the intent is immaterial. (Sec. 1698, Wharton's Criminal Law.)

"Various industrial exhibitions and entertainments for charitable purposes are all of them shows." (*United States*

On the question of what amusements are prohibited on Sunday, see note in 30 L. R. A., N. S., 465.

On the question of constitutionality of Sunday laws, see note in 22 L. R. A. 721.

v. *Buffalo Park,* 16 Blatchf. 189, 24 Fed. Cas. 1299; *Econo-mopoulos v. Bingham,* 109 N. Y. Supp. 728; *Lempke v. State* (Tex. Cr.), 171 S. W. 217.)

The courts have repeatedly recognized the fact that the state has the inherent right to regulate the course of conduct on the part of the citizens of the state, and where they transgress the statute law, such acts will be prohibited even though they are sought to be performed under the guise of religious liberty; there is no reason why a distinction should be made against certain performances sought to be engaged in by a certain sect and the rule not universally applied. Such a course of conduct would certainly be unfair, illegal and discriminatory. (*Commonwealth v. Herr,* 39 Pa. Sup. Ct. 454, 229 Pa. 132, 78 Atl. 68; *Matter of Frazee,* 63 Mich. 396, 6 Am. St. 310, 30 N. W. 72; *State v. Weiss,* 97 Minn. 125, 105 N. W. 1127, 7 Ann. Cas. 932; *State v. Barnes,* 22 N. D. 18, Ann. Cas. 1913E, 930, 132 N. W. 215, 37 L. R. A., N. S., 114; *State v. Neitzel,* 69 Wash. 567, Ann. Cas. 1914A, 899, 125 Pac. 939, 43 L. R. A., N. S., 203.)

The charging or failing to charge an admission is immaterial. In our statute the act prohibited is the keeping open or the opening of a moving picture show on Sunday. Under our statute, where the main feature is the moving picture part, the religious aspect is not a matter of legitimate consideration as a defense. This is the main import of the statute, with the expediency of which the court has nothing to do. (*Wright v. Kelley,* 4 Ida. 624, 43 Pac. 565; *Blaine Co. v. Heard,* 5 Ida. 6, 45 Pac. 890; *State v. Dolan,* 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259; *In re Jacobs,* 13 Ida. 720, 92 Pac. 1003.)

"Penal laws are to be construed strictly; but they are not to be construed so strictly as to defeat the obvious intention of the legislature." (Sutherland on Statutory Construction, p. 963, note 18; *Adams v. Lamsdon,* 18 Ida. 492, 110 Pac. 280.)

Wyman & Wyman, for Respondent.

Penal statutes should be strictly construed. (*Ex parte Bailey,* 39 Fla. 734, 23 So. 552; *State v. Woodruff,* 68 N. J. L. 89, 52 Atl. 294.)

Sunday statutes are criminal in their nature, and must be strictly construed. (*Commonwealth v. Alexander,* 185 Mass. 551, 70 N. E. 1017; Lewis, Sutherland Statutory Construction, 2d ed., 520.)

That words used in a statute should be construed in accordance with their ordinary usage, see *Adams v. Lansdon,* 18 Ida. 483, 110 Pac. 280; *In re Hull,* 18 Ida. 475, 110 Pac. 256, 30 L. R. A., N. S., 465; *In re Bossner,* 18 Ida. 519, 110 Pac. 502,

"Where moving pictures are given as an incident to and for the purpose of illustrating a lecture, which in itself is permissible, their showing does not fall within the intention of the statute." (*People v. Finn,* 57 Misc. Rep. 659, 110 N. Y. Supp. 22.)

MORGAN, J.—On August 11, 1914, the above-named respondent, together with two other persons, was arrested upon a warrant issued out of the justice's court of Boise precinct upon a charge of keeping open and operating a moving picture show on Sunday in the city of Boise, Idaho. The record does not disclose what disposition, if any, was made of the cases of the other defendants but it appears that on November 30th, 1914, the respondent, upon an agreed statement of the facts, was, by the justice of the peace, adjudged to be guilty of the crime charged against him. He appealed to the district court, where the case was submitted to the judge without a jury, upon the agreed facts, and where he was adjudged to be not guilty. The case is brought here by the state upon appeal from the judgment last mentioned.

It appears that respondent is a resident and citizen of the city of Boise, where he is engaged in the practice of his profession, that of an osteopathic physician, and that he devotes a portion of his time and means to religious work, and is an active member of the local class of the International Bible

Students' Association, which is a branch, or subsidiary organization, of the Watch Tower Bible and Tract Society, a religious corporation, It is agreed: "That among other means employed by the aforesaid society and association, or religious organization, in preaching the gospel, teaching the Bible and giving Bible lectures, is that known as the Photo Drama of Creation, which consists of a series of Bible lectures, together with pictures and photographic illustrations thereof; that the same is shown in four parts, each part requiring two hours to hear and see the same; it takes up the Divine plan, as set forth in the Bible, from the beginning of earth's creation and follows the development thereof in orderly manner down to the present date; that the arrangement thereof is as follows: Approximately 100 Bible lectures, or sermons, were carefully prepared and then dictated, or spoken, into a phonograph and records, or discs, thereof made, and afterward said lectures, or sermons, were and are reproduced by the phonograph; that for the purpose of illustrating these Bible lectures, or sermons, and to enable the mind to more readily grasp the lessons taught thereby, paintings and photographs and photographic scenes of such Bible subjects are reproduced upon a screen by means of a stereopticon and cineomatograph, or moving picture machine, which pictures, photographs and photographic scenes, relate to and illustrate the subject matter of the lecture or sermon."

It is further agreed that, prior to the 9th day of August, 1914, the respondent, together with other citizens and residents of Boise who were members of the local class of the International Bible Students' Association and interested in teaching the Bible and preaching the gospel to others, procured a building in that city known as the "Majestic Theater," for the purpose of producing therein the Photo Drama of Creation; that the rent for the building was paid by the members of the local class of the association, to which respondent contributed, and that all other expenses in connection therewith were paid by the society, or association, or by the members thereof, in order that the citizens of Boise might

have the opportunity of hearing such lectures or sermons and of seeing the illustrations thereof.

The agreed statement of facts further recites as follows:

"That on Sunday, the 9th day of August, 1914, the said Photo Drama of Creation was begun or opened at the building aforesaid, and part 1 thereof was given; that on the same day and just preceding the opening of the Photo Drama of Creation, the local class of the International Bible Students' Association held their regular religious services in said building, namely, the one known as the 'Majestic Theater,' and the defendant was present and participated in said meeting or religious worship; that thereafter and on the same day the defendant, together with others, actively engaged in giving said part 1 of said Photo Drama of Creation in said 'Majestic Theater' building; that the defendant's services in connection therewith were rendered entirely free, without charge or remuneration; that no one having any part therein or connection therewith received a salary, but some of the helpers were paid their actual expenses, which expenses were provided by voluntary contribution as aforesaid by persons interested in the teaching of the Bible as aforesaid or by said society or association aforesaid; that all the funds of the said society or association are provided by voluntary contributions made by persons interested in the spreading of the gospel and teaching the Bible as aforesaid."

It is further agreed that the Majestic Theater was one of the regular moving picture houses in Boise and was equipped for moving pictures, but was, at the time, under the exclusive management and control of the society and association heretofore mentioned, and was used in the manner and for the purposes heretofore set forth, and for no other. The agreed statement of facts further recites:

"All the pictures thrown upon the screen and all the lectures or sermons given and everything connected with the said Photo Drama of Creation as aforesaid were clean and moral in character and were highly edifying and instructive; no advertisements of any kind were exhibited; all that was done and performed at the time and place mentioned in the

complaint was of a religious nature, and the sole purpose of those connected therewith, including the defendant, was to enlighten and instruct the people without the hope, expectation or receipt of pecuniary profit or reward. The audience throughout was quiet, orderly and reverential and no applause was allowed or given.''

It is agreed that the sole issue to be determined is whether or not the acts done at the time and place mentioned in the complaint in giving the lecture, or sermon, on the phonograph and in illustrating the same by stereopticon slides and moving pictures, in the light of the religious claims therefor and significance thereof, constitute a violation of sec. 6825, Rev. Codes, as amended by chap. 99, of the Eleventh Session of the Idaho Legislature (Sess. Laws 1911, p. 342), which provides: ''It shall be unlawful for any person or persons in this state to keep open on Sunday any . . . . theater, moving picture show, play-house, dance-house, race-track, merry-go-round, circus or show, concert saloon, billiard or pool room, bowling-alley or variety hall. . . . . Any person or persons violating this section shall be guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not less than thirty dollars ($30) nor more than two hundred and fifty ($250) for each offense and shall be punished by imprisonment in the county jail not to exceed ninety days, and upon second conviction any license which may have been granted for opening and maintaining any such place of business shall also be rendered void and shall not be renewed within two years next thereafter.''

Probably no better definition of the phrase ''moving picture show,'' as used in the statute, can be found than that employed by the learned trial judge in this case. He said: ''I think that the robust common sense of the community will say that it is a public exhibition of moving pictures primarily to amuse and entertain, sometimes incidentally carrying with it instructive features. The show is almost always operated for profit, although this is perhaps not an essential element of the definition. It is certain that the pictures are the main element, and the pleasure feature predominates, that

being the connotation of the word 'show.' In other words, it is a public place of amusement, like all the other institutions with which it is grouped in the statute.''

There is no doubt that the term ''moving picture show'' is generally understood to mean a place where motion pictures are exhibited for the purpose of amusement and entertainment, and this is the meaning to be applied to the phrase in determining what was the legislative intent when the statute under consideration was enacted.

This court said in *Re Bossner,* 18 Ida. 519, 110 Pac. 502: ''It is a well-established rule of law that when words have not a technical meaning or application, or when they have not been so used or employed in the statute, they should then be given their ordinary significance as they are popularly understood.'' With this rule in mind, it is impossible to conclude that it was the legislative purpose to prohibit the use, on Sunday, of a moving picture machine for the purpose of worship, or religious instruction, as a means of illustrating a sermon or lecture.

It is apparent the legislature had in mind the suppression of the evil of conducting certain forms of business on Sunday. This view is strengthened by the fact that it is provided, as a part of the punishment in the event of a second conviction of a violation of the statute, that ''any license which may have been granted for operating and maintaining any such *place of business* shall also be rendered void and shall not be renewed within two years next thereafter.'' It cannot be inferred from the agreed facts in this case that respondent and his associates were engaged in the *business* of conducting a moving picture show in the sense in which that phrase is commonly used.

Prior to its amendment this section of the code was before the court for construction in *Re Hull,* 18 Ida. 475, 110 Pac. 256, 30 L. R. A., N. S., 465, wherein it was said: ''This class of legislation is upheld solely as an exercise of the police power of the state. The prohibition of public amusements on Sunday must therefore rest on the theory that it is necessary either for the protection of the public morals, the

public health or the public peace and safety.'' We are in accord with that opinion as well as with that in *Re Bossner, supra,* wherein it was held, even before the statute was amended so as to expressly include moving picture shows among business enterprises, the operation of which on Sunday was prohibited, that such shows came within the inhibition of the statute forbidding the opening or conducting on Sunday of ''any theater, play-house . . . . circus or show . . . . or any such place of public amusement,'' for it may readily be seen that the legislature might, with entire propriety, consider the conducting of such a business on Sunday detrimental to the public morals or the public peace, but we are unable to reach the conclusion that the use of a moving picture machine for the purpose of illustrating a sermon, or religious lecture, can be by anyone deemed to be detrimental, in any manner, to the public welfare.

The constitution of Idaho guarantees to each inhabitant of the state the inalienable right to decide for himself as to the wisdom and righteousness of his mode of worship. It is provided in sec. 4, art. 1, that ''The exercise and enjoyment of religious faith and worship shall forever be guaranteed''; and in sec. 19, art. 21, as follows: ''It is ordained by the state of Idaho that perfect toleration of religious sentiment shall be secured, and no inhabitant of said state shall ever be molested in person or property on account of his or her mode of religious worship.''

The good faith of respondent and his associates in adopting and carrying out their plan of devotional exercises has not been questioned, and it is not for this court to decide that it is, or that it is not, the correct course for them to pursue. We feel that the provisions of the constitution above quoted prohibit us from deciding that question, and that, in a case like this, where entire good faith is apparent and where the exercises were not being conducted merely in the name of religion and as a pretense and subterfuge to cover acts criminal in their nature, we would not presume to decide it if we were not so prohibited.

To place upon the statute under consideration the construction asked for by appellant and to hold that the use of a moving picture machine on Sunday, for the purpose to which it was put by respondent and his associates, is keeping open or operating a moving picture show in violation of the statute, would be to improperly invoke the police power of the state for, thus construed and in that particular, the statute would bear no real or substantial relation to the public health, the public morals, the public peace or the public safety. Such a construction would also bring the statute into conflict with sec. 4, art. 1, and sec. 19, art. 21, of the constitution, for thereby religious liberty would be denied.

In case of *Grice v. Clearwater Timber Co.,* 20 Ida. 70, 117 Pac. 112, this court, quoting from Cooley's Const. Lim., 7th ed., p. 255, said: "Whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution and give it the force of law, such construction will be adopted by the court." Continuing, it is said in the opinion: "And it is held by many courts that where there is room for two constructions of a statute, both equally obvious and equally reasonable, the court must, in deference to the legislature of the state, assume that it did not overlook the provisions of the constitution and designed the act to take effect."

In case of *Cheseborough v. City and County of San Francisco,* 153 Cal. 559, 96 Pac. 288, the supreme court of California states the rule to be: "When a legislative provision is capable of two constructions, one consistent, and the other inconsistent, with the provisions of the constitution, it is a well-recognized principle of construction that the statute should be given that construction which will make it harmonious with the constitution and comport with the legitimate powers of the legislature."

Applying that rule to this case, we hold that the use to which respondent and his associates put the moving picture machine and the other property appertaining to the Majestic Theatre did not constitute keeping open or operating a moving picture show as contemplated by sec. 6825, Rev. Codes,

as amended by chap. 99 of the Eleventh Session of the legislature, and the decision of the trial court is accordingly affirmed.

We recommend that the state pay respondent's costs upon appeal.

Sullivan, C. J., and Budge, J., concur.