# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47334

|  |  |  |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, February 2021 Term |
| | ) | |
| v. | ) | AMENDED |
| | ) | Opinion Filed: May 20, 2021 |
| RICHARD M. HEATH, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Adams County. D. Duff McKee, District Judge.

The decision of the district court is <u>affirmed.</u>

Richard M. Heath, Pollock, appellant pro se argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. John McKinney argued.

_____

BRODY, Justice,

This appeal arises from a magistrate court's denial of a defendant's motion for the return of property under Idaho Criminal Rule 41(f) ("Rule 41(f)"). During a traffic stop, police confiscated a pipe, a bong, and some marijuana possessed by Richard Heath. Heath was charged with misdemeanor possession of marijuana and misdemeanor possession of drug paraphernalia. Heath moved to suppress the pipe and bong as evidence against him and the magistrate court granted the motion. Heath also moved for the return the pipe and the bong under Rule 41(f), but the magistrate court denied the motion after holding that the pipe and bong were contraband. Heath appealed the denial of his motion to the district court, which affirmed. For the reasons set out below, we too affirm.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 21, 2017, Heath was a passenger in a pickup truck driven by his brother when a police officer stopped them for speeding. After apparently deciding to let Heath's brother go with a warning, the police officer began questioning the two about an odor of marijuana the officer detected in the vehicle. During an exchange with the officer, Heath admitted that he had some marijuana and produced a small vial of buds and a pipe made from an elk antler. The officer then searched the pickup and found three more small vials of marijuana and a bong, also fashioned out of an elk antler. The officer seized the drugs, pipe, and bong, and cited Heath for misdemeanor possession of a controlled substance under Idaho Code section 37-2732(c)(3) and possession of drug paraphernalia under Idaho Code section 37-2734A(1).

In September 2017, Heath pleaded not guilty and informed the magistrate court that he intended to represent himself. Heath later filed a motion to dismiss, arguing that the officer's conduct during the stop and subsequent search violated his constitutional rights. The State opposed the motion, treating it as a motion to suppress. Two hearings and a number continuances later, the magistrate court ruled in June 2018, that the officer unlawfully extended the traffic stop. Accordingly, the magistrate court suppressed the evidence obtained from the stop. The State then dismissed the charges against Heath.

Though the magistrate court granted the motion to suppress, it reserved judgment on the motion at the center of this appeal—a motion under Rule 41(f) for return of the pipe and bong, which Heath filed in March 2018. Heath submitted three supplementary briefs in support of his motion in July, August, and October 2018, and the magistrate court held hearings on the motion in August and November 2018. Heath raised a number of arguments, but his primary contentions were: (1) that Rule 41(f) required the return of his pipe and bong, (2) that marijuana is improperly prohibited as a schedule I drug under Idaho Code section 37-2705, and (3) that the prohibition of marijuana violated his right to religious liberty. The magistrate court denied the motion to return property at the November hearing and issued a written opinion shortly thereafter. Heath appealed to the district court in January 2019. The district court affirmed the decision of the magistrate court in July 2019. Heath timely appealed to this Court.

## II. STANDARD OF REVIEW

"On appeal from a decision rendered by the district court while acting in its intermediate appellate capacity, this Court directly reviews the district court's decision." *State v. Phipps*, 166

Idaho 1, 4, 454 P.3d 1084, 1087 (2019) (quoting *State v. Chernobieff*, 161 Idaho 537, 539, 387 P.3d 790, 792 (2016)).

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Id.* (quoting *Pelayo v. Pelayo*, 154 Idaho 855, 858, 303 P.3d 214, 217 (2013)).

## III. ANALYSIS

### A. Rule 41(f) does not allow for the return of contraband to a defendant.

Idaho Criminal Rule 41(f) provides that "[a] person aggrieved by an unlawful search and seizure of property may move for the property's return." However, the magistrate court denied Heath's motion for the return of the pipe and bong because it determined they were contraband under Idaho Code section 37-2734A. That statute provides: "[i]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to . . . inhale, or otherwise introduce into the human body a controlled substance." I.C. § 37-2734A(1). Heath does not dispute that he used the pipe and bong to consume marijuana and he has not suggested they have any other use.

Primarily, Heath contends that the magistrate court erred in refusing to return the pipe and bong because he disagrees that they are contraband. We address these arguments in Section B, below. First, however, we consider Heath's argument that the pipe and bong must be returned even if they are contraband. In support, Heath notes that Rule 41(f) is silent on the issue of contraband and that the magistrate court granted his motion to suppress because the search of his brother's pickup was unlawful. Thus, Heath asserts that if we upheld the denial of his Rule 41(f) motion, we would "presuppose that violations of the 4th Amendment of the United States Constitution and Article I, section 17 of the Idaho State Constitution are fully permitted if the property seized is later claimed to be 'contraband.' "

Heath is correct that Rule 41(f) does not mention contraband. However, "[w]e will not interpret a rule in a way that would produce an absurd result." *State v. Montgomery*, 163 Idaho 40, 44, 408 P.3d 38, 42 (2017). The absurd consequences of Heath's position are evident. If we interpreted Rule 41(f) to require the return of contraband whenever evidence is suppressed, we would open the door for defendants to reclaim much more than drug paraphernalia. For example, Heath's reading of the rule would allow defendants to reclaim illegal drugs themselves (no matter the type or quantity), or weapons that defendants may not legally possess, or even property stolen

3

by defendants from others. Moreover, there is no basis for Heath's contention that constitutional violations would be "fully permitted" unless we adopt his interpretation of the rule. The remedy we have long recognized in criminal proceedings for illegal searches and seizures (in addition to any potential civil remedies) is suppression of evidence. Heath prevailed on his suppression motion and the charges against him were dismissed as a result. We need not, and will not, fashion an additional remedy from Rule 41(f).

**B. The district court did not err in affirming the magistrate court's finding that the pipe and bong are contraband.**

Though Heath argues that contraband is returnable under Rule 41(f), his primary contention is that the district court erroneously concluded the pipe and bong were contraband in the first instance. Heath argues the pipe and bong are not contraband for two reasons. First, he contends that the provisions of Idaho's enactment of the Uniform Controlled Substances Act ("CSA") prohibiting the possession and use of marijuana are invalid. Second, he argues that the prohibition of marijuana conflicts with constitutional and statutory guarantees of religious liberty.

**1. Marijuana is not improperly listed as a controlled substance under Idaho Code section 37-2705.**

Both the magistrate court and district court held that the use of marijuana was validly proscribed under the CSA. Heath raises five arguments to the contrary: (1) marijuana was placed on schedule I of the CSA by the Idaho Board of Pharmacy ("Board"), an executive agency, in violation of the separation of powers provisions of the Idaho Constitution; (2) marijuana is not subject to any regulation because it is a natural herb created by God, not a pharmaceutical drug; (3) the State may not regulate marijuana because the Idaho Constitution does not contain a provision (analogous to the 18th Amendment to the United States Constitution) that permits prohibition of marijuana; (4) although marijuana is categorized as a schedule I drug under the CSA, it does not meet the criteria for placement on that schedule; and (5) marijuana is not harmful to people and, if it were legalized, it could help "heal the Earth through regenerative agriculture."

Heath abandoned his first argument after the State pointed out that the legislature, not the Board, placed marijuana on schedule I of the CSA. Thus, we do not address the parties' arguments regarding the legislature's delegation of authority to the Board.

As to Heath's second and third arguments, it is well established that the regulatory power of the state is plenary. *Idaho Power & Light Co. v. Blomquist*, 26 Idaho 222, 241, 141 P. 1083, 1091 (1914). Unlike Congress, which may only exercise the powers expressly granted to it by the

4

federal Constitution, the Idaho legislature may enact any law on any matter unless it is constitutionally prohibited from doing so. *Id.; see also* U.S. Const. amend. X; *Standlee v. State*, 96 Idaho 849, 852, 538 P.2d 778, 781 (1975). Thus, no authority analogous to the 18th Amendment was necessary for the legislature to prohibit marijuana under the CSA. Further, while Heath argues that the CSA attempts to "criminalize God" for creating marijuana, the CSA only purports to regulate the conduct of people within Idaho, not deities. As such, Heath's second and third arguments are without basis in law.

Turning to Heath's remaining arguments, the CSA lists controlled substances on several schedules according to a substance's potential for abuse and whether it has an accepted medical use. *See* I.C. §§ 37-2704 to 37-2713A. Administration of the regulatory provisions of the CSA is delegated to the Board, which "may add substances to or delete or reschedule all substances enumerated in the schedules" pursuant to the Idaho Administrative Procedure Act ("IDAPA"). I.C. § 37-2702. Section 37-2704 of the CSA provides that the Board "shall place a substance in schedule I" if the substance has both a "high potential for abuse" and "no accepted medical use in treatment in the United States . . . ." Marijuana is listed as a schedule I controlled substance. I.C. § 37-2705(d)(19).

Heath argues that marijuana does not meet the criteria set out in Idaho Code section 37-2704 for placement on schedule I because it is used for medical treatment in many states. Therefore, Heath contends marijuana's prohibition under the CSA is invalid. However, by its terms, section 37-2704 only establishes criteria the *Board* must consider in placing drugs on schedule I; it does not limit the legislature's ability to prohibit the use of substances. And while Heath's arguments could be construed as a claim that the Board has unlawfully failed to remove marijuana from schedule I because it fails the test in section 37-2704, Heath has not complied with the requirements of IDAPA to challenge an action (or a failure to act) by the Board. *See* I.C. §§ 67-5270 to 67-5279.

Finally, Heath urges this Court to invalidate the listing of marijuana as a controlled substance because he alleges that science has shown marijuana is not harmful, that its prohibition is motivated by the desire to favor certain industries, and that the legalization of marijuana could reduce global warming. However, these arguments concern policy and are properly directed to the legislature. A fundamental incident of the separation of powers is that courts are not free to invalidate statutes, absent a constitutional infirmity. Idaho Const. art II, § 1; *Idaho Power & Light*

*Co.*, 26 Idaho at 241, 141 P. at 1091. Yet Heath has not presented argument or authority on how any of the above allegations, even if accepted as true, would render the statutes he challenges unconstitutional. Thus, we do not consider these arguments.

## 2. The prohibition of marijuana under the CSA does not violate Heath's constitutional right to religious liberty.

Next, we turn to Heath's contention that the CSA's prohibition on the use of marijuana violates his right to religious liberty. The magistrate court rejected this argument and the district court affirmed, writing that the issue was firmly settled:

> This issue has been squarely addressed in *State v. Fluewelling*, 150 Idaho 576 [, 249 P.3d 375] (2011), which held that the Idaho Constitution does not protect against prosecution for conduct that violates a neutral criminal statute of general applicability, such as possession of marijuana or related drug paraphernalia . . . .

In *Fluewelling*, the defendant was convicted of felony possession of marijuana with intent to deliver under section 37-2732 of the CSA. 150 Idaho at 577, 249 P.3d at 376. The defendant appealed his conviction, arguing that the CSA violated his religious freedom because he was "an active practitioner of THC Ministries" who consumed marijuana and shared it with others as a sacrament of his religion. *Id.* The defendant argued that his practices were protected under the First Amendment to the United States Constitution, as well as article I, section 4 of the Idaho Constitution, which provides that "[t]he exercise and enjoyment of religious faith and worship shall forever be guaranteed; and no person shall be denied any civil or political right, privilege, or capacity on account of his religious opinions . . . ."

We rejected the defendant's arguments in *Fluewelling*. We held that the First Amendment "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id.* at 579, 249 P.3d at 378 (quoting *Employment Div., Dep't of Human Res. Of Oregon v. Smith*, 494 U.S. 872 (1990) (internal quotations omitted)). We applied the same standard to the defendant's claim under the Idaho Constitution, holding that article I, section 4 "does not protect against prosecution for conduct that violates a neutral criminal statute of general applicability simply because such conduct may be engaged in for religious reasons." *Id.*

Heath contends that the district court erred in affirming the decision of the magistrate court under *Fluewelling*. In part, Heath suggests that the district court erred in relying on *Fluewelling* because there are a number of differences between the facts, procedure, and arguments in this case

6

and those in *Fluewelling*. For instance, Heath notes that *Fluewelling* did not involve a Rule 41(f) motion; that the defendant in *Fluewelling* did not argue the listing of marijuana on schedule I was invalid; and that the charges against the defendant in *Fluewelling* are different from the charges that Heath faced. These differences are irrelevant. The district court did not rely upon *Fluewelling* because it is identical to this case, but because it states a legal principle that applies whenever the constitutionality of a statute is challenged on religious liberty grounds. However, Heath does raise two arguments that bear on the applicability of the rule in *Fluewelling*. We turn to those arguments now.

First, Heath contends that the provisions of the CSA prohibiting the use of marijuana are not neutral and generally applicable. However, Heath's arguments do not support his conclusion. Certainly, the prohibition of marijuana under the CSA impairs Heath's ability to consume marijuana, which he attests is an important element of his belief system. Heath has zealously argued this point and we will not question the sincerity of his beliefs. But the impact of the CSA on Heath's ability to legally practice his beliefs is not the dispositive issue. Rather, the issue is whether the CSA proscribes religious use of marijuana while permitting non-religious use, or has been designed so that it applies primarily to religiously motivated conduct. *Cf. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (invalidating municipal ordinances that had been "gerrymandered with care to proscribe religious killings of animals but to exclude almost all secular killings"). Heath has made no such argument.

Second, Heath argues that *Fluewelling* does not dispose of this case because it did not address the religious liberty provision of article XXI, section 19 of the Idaho Constitution. Article XXI of the state constitution is titled "Schedule and Ordinance" and contains numerous housekeeping provisions for the transition from territorial status into statehood. Section 19 of article XXI is titled "Religious freedom guaranteed—Disclaimer of title to Indian lands." The first sentence of section 19 provides: "It is ordained by the state of Idaho that perfect toleration of religious sentiment shall be secured, and no inhabitant of said state shall ever be molested in person or property on account of his or her mode of religious worship." The remainder of section 19 is comprised of unrelated provisions having to do with Indian reservations, taxes, and territorial debts.

Heath asserts that article XXI, section 19 provides greater protection of religious liberty than article I, section 4 because its language is "more emphatic" and the phrases " '[r]eligious

7

sentiment" and 'mode of religious worship' were deliberately intended to be broadly inclusive terms, well beyond an 'establishment of religion,' particularly since they were added at the end of said constitution <u>after</u> the guarantee in Article I, section 4." (Emphasis by Heath). We are unpersuaded.

We have only mentioned the religious liberty provision of article XXI, section 19 in two decisions, in both instances simultaneously with article I, section 4. In neither case did we suggest any difference in scope between the two sections. *See Lepel v. Lepel*, 93 Idaho 82, 456 P.2d 249 (1969) and *State v. Morris*, 28 Idaho 599, 155 P. 296 (1916). This is consistent with the rule that we construe like provisions alike when they appear in a single document. *See City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, 583, 416 P.3d 951, 955 (2018) (quoting *State v. Barnes*, 133 Idaho 378, 382, 987 P.2d 290, 294 (1999)) (applying the rule in the context of statutory interpretation and noting "[i]t is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions.").

Furthermore, nothing during the proceedings of the Idaho constitutional convention suggests that the language of article XXI, section 19 was intended to provide greater protection than article I, section 4. Rather, the provision—and its specific language—is the result of a historical quirk. Whereas the constitutional conventions of other western states "proceed[ed] in an orderly fashion under the specific authority of a congressional enabling act[,]" the Idaho constitutional convention was called before Congress had passed an enabling act for our state. 1 PROCEEDINGS AND DEBATES OF THE CONSTITUTIONAL CONVENTION OF IDAHO, at iii–iv (I.W. Hart ed., 1912). This left the delegates of the Idaho convention in an "uncertain position" because they performed their work unaware of what requirements Congress might impose for admission. *Id.* In response to this uncertainty, the delegates modeled article XXI, section 19 on the restrictive provisions contained in Section Four of the Congressional Enabling Act of February 22, 1889, for North and South Dakota, Montana and Washington ("Section Four"). 2 PROCEEDINGS AND DEBATES OF THE CONSTITUTIONAL CONVENTION OF IDAHO 1655–56, 2014–16 (I.W. Hart ed., 1912). Indeed, the delegates were so concerned with obtaining congressional approval that they rejected the first draft of article XXI, section 19 because it did not mirror the language of Section Four closely enough. *Id.* at 2022–24. Thus, it was re-drafted as a nearly word-for-word copy of Section Four and was adopted with little further discussion—even though this resulted in the

8

duplication (albeit with different language) of several provisions appearing elsewhere in the constitution. *Compare* Idaho Const. art. I, § 4 (protecting religious liberty); Idaho Const. art. VII, § 4 (providing that federal property is exempt from state taxation); Idaho Const. art. XXI, § 4 (providing the state will assume territorial debts) *with* Idaho Const. art. XXI, § 19.

In sum, the language of article XXI, section 19 was not "deliberately intended" to broaden the protection guaranteed by article I, section 4. Nor does its placement in the article for "Schedule and Ordinance" near the end of the constitution reflect an attempt to expand upon the earlier provision. Rather, the language and existence of the latter religious liberty provision merely reflects the belt-and-suspenders approach the delegates of the Idaho convention took to anticipating and assuaging congressional concerns about admitting Idaho to the Union. Heath has not demonstrated that *Fluewelling* does not apply to this case and we affirm the decision of the district court that the CSA does not unconstitutionally infringe on Heath's religious liberty.

### 3. We will not consider Heath's argument that the CSA violates the Free Exercise of Religion Protected Act because it was raised for the first time on appeal.

In addition to his constitutional arguments, Heath contends that the prohibition of marijuana under the CSA violates the Free Exercise of Religion Protected Act, Idaho Code section 73-401, et seq. ("FERPA"). FERPA protects religious liberty beyond the constitutional baseline by providing that the "government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government can demonstrate the burden is "[e]ssential to further a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest." I.C. § 73-402. However, the State argues that Heath waived his argument under FERPA because he did not raise it below. The State is correct.

The first mention of FERPA that appears in the record is in Heath's notice of appeal to the district court. While Heath asserts that he "br[ought] up" FERPA at the hearing before the magistrate court, he concedes that he did not actually argue the issue. Heath notes that because he raised a constitutional challenge to the prohibition of marijuana, and FERPA "merely sews up the loopholes in our constitutional guarantees," he thought that arguing the issue before the magistrate court "seemed unnecessary." However, arguing the issue was necessary to preserve it for appeal. *State v. Gertsch*, 137 Idaho 387, 395, 49 P.3d 392, 400 (2002) ("The longstanding rule of this Court is that we will not consider issues that are presented for the first time on appeal."). Thus, Heath has waived his FERPA claim.

9

Heath argues that we abandon our constitutional duty to uphold the laws of Idaho by not considering his FERPA claim. Heath's contention is unfounded. By only considering arguments properly preserved for appeal, we do not shirk our responsibilities under the Idaho Constitution—we comply with them. The Idaho Constitution defines the jurisdiction of this Court, and (except in unusual circumstances not at issue here) the nature of that jurisdiction is appellate. When exercising appellate jurisdiction, we are limited to deciding questions of law and reviewing the application of the law to facts found by the lower courts. Our role is not, and has never been, to decide the facts in the first instance. *See, e.g.*, *Smith v. Sterling*, 1 Idaho 128, 131 (1867) (refusing to consider facts first alleged on appeal).

Here, the magistrate court made no findings of fact or conclusions of law that would permit appellate review of Heath's FERPA claim because he never made an argument under FERPA before the magistrate court. Although Heath's arguments on appeal imply that his FERPA claim is reviewable as a pure issue of law, it is not. As the Idaho Court of Appeals has observed, FERPA claims present "difficult and delicate" questions of fact, including whether a person's convictions are "religious beliefs," which trigger the applicability of FERPA, or philosophical, political, or ideological beliefs, which do not. *State v. Cordingley*, 154 Idaho 762, 767, 302 P.3d 730, 735 (Ct. App. 2013). In distinguishing between religious and non-religious beliefs, the Court of Appeals has employed a five-element test with ten sub-elements. *Id.* Though we have not endorsed this test and have no occasion to do so here, it illustrates the fact-intensive nature of the inquiry and the inappropriateness of our considering the issue without any factual findings below.

As a pro se litigant, Heath's protests to our application of the rule are understandable. However, "pro se litigants must conform to the same standards and rules as litigants represented by attorneys, and this Court will address the issues accordingly." *Owen v. Smith*, ___ Idaho ___, ___, 477 P.3d 193, 200 (2020) (quoting *PHH Mortg. v. Nickerson*, 164 Idaho 33, 38, 423 P.3d 454, 459 (2018) (internal quotations omitted). Heath had an opportunity to present an argument under FERPA before the magistrate court, but he did not. In the absence of factual findings below, we cannot consider this argument now.

### IV.    CONCLUSION

For the reasons above, the decision of the district court is affirmed.


Chief Justice BEVAN, and Justices BURDICK, STEGNER, and MOELLER CONCUR.

10