JULIA CAPITULA, as Administratrix, etc., of SOPHIA CAPITULA, Deceased, Respondent, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Third Department, July 1, 1925.

**Railroads — action to recover for death of plaintiff's intestate who was killed by train while she was crossing defendant's bridge — intestate was trespasser — negligence cannot be predicated on fact that braking equipment was out of repair or on failure of defendant to have footpath on its private bridge — evidence shows that engineer was not negligent after he discovered intestate's position.**

In an action to recover for the death of plaintiff's intestate who was struck and killed by one of defendant's trains while she was passing over a private railroad

bridge of the defendant, and at a time when she was trespassing on defendant's property, negligence on the part of the defendant cannot be predicated on the fact that the braking equipment on the train was defective or on the fact that the defendant did not have a footpath on the bridge so that the intestate could have avoided the train.

The evidence does not establish that the defendant's engineer was guilty of negligence or of any act rendering the defendant liable, after he discovered the presence of the plaintiff's intestate on the railroad bridge, since it appears that as soon as he saw plaintiff's intestate he applied the service brake and immediately thereafter applied the emergency brake, but that owing to frost on the rails, the train could not be stopped in time to avoid striking plaintiff's intestate. The mere fact that the engineer applied the service brake before applying the emergency brake does not, of itself, constitute negligence.

APPEAL by the defendant, The New York Central Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 20th day of March, 1924, upon the verdict of a jury for $4,000, and also from an order entered in said clerk's office on the 22d day of March, 1924, denying defendant's motion for a new trial made upon the minutes.

*Whalen, Murphy, McNamee & Creble* [*Robert E. Whalen* of counsel], for the appellant.

*John H. Gleason,* for the respondent.

VAN KIRK, J.:

On a former appeal by this defendant this court expressed its views upon the law and the facts as then presented (200 App. Div. 247). There is little, if any, difference in the evidence, except that the plaintiff did not call the two experts used upon the former trial, but in place thereof did call one witness, Dettman. Briefly, the intestate crossed open land, climbed the railroad embankment to the tracks and proceeded along the tracks to cross three bridges, one seventy-eight feet, one one hundred and eight feet and one sixty-one feet in length. No public way led to the defendant's tracks. On these bridges was no place of safety for a pedestrian while a train passed and only the ties on which to walk. In choosing this dangerous course the intestate was taking all the chances of danger and was negligent of her own safety; she was a trespasser on defendant's right of way; printed signs warned her and all others against walking on the tracks; the statute forbids it. (Railroad Law, § 83.) As in the former opinion held, the defendant owed her no duty save to do her no intentional, reckless or wanton injury; and it is conceded that this rule applies to this case.

The defendant was not negligent if the view along the tracks ahead of the train was obscured by an overhead bridge, or by curves and intervening obstructions; nor was it negligent if its

Third Department, July, 1925.                    [Vol. 213

equipment was old and not of the best type for quick stopping of the train; nor if its brakes were weak, having but one brake flange or shoe; nor because sand was not furnished for the rails. Nor can effective argument for liability here be made because the trespasser was in a " trap " and no footpath across the bridge was furnished.  She put herself in the " trap," if any there was, and there was no occasion for a footpath.  Indeed, had there been a footpath, the respondent would probably now be arguing that it was an invitation for people to cross.  Unless the engineer in this case was negligent, the defendant was not negligent.  Primarily it was the engineer's duty to run his train on schedule time and guard the safety of the passengers; it was not his duty to watch for trespassers on the track; he had a right to presume that people would obey the law; he was not negligent if his train was running at a high rate of speed.

It was only after the engineer discovered the trespasser on the tracks that any duty as to her fell upon the engineer in this case. There was a railroad embankment and overhead crossing of the defendant's track about 1,000 feet westerly of the bridges plaintiff's intestate was crossing when injured.  This overhead bridge is called " T-37."  As the track passes under T-37 it curves to the left.  The engineer was on the right-hand side of the engine and was looking for his " clear way " signal for Green Island.  The fireman was on the left-hand side; he first saw the intestate and called to the engineer, who then looked and saw her.  No negligence can be predicated on the fact that the engineer did not see her sooner.  The plaintiff called the engineer as a witness and thus vouched for his integrity. (*Potts* v. *Pardee*, 220 N. Y. 431; *Freebold* v. *Town of Glen*, 211 App. Div. 249.)  There is nothing in the engineer's testimony which is inherently improbable; there is no attempt to contradict his testimony, save as to the sounding of the whistle when he saw the intestate on the bridge.  To contradict his testimony and the testimony of three of defendant's witnesses in this respect, only negative evidence was given and, as stated in our opinion on the former appeal, the plaintiff's negative evidence as against the defendant's positive evidence did not present a question of fact for the jury. (*Matutinovich* v. *N. Y. C. R. R. Co.*, 182 App. Div. 451; *Foley* v. *N. Y. C. & H. R. R. R. Co.*, 197 N. Y. 430.)  We may accept his statements as to what he did as expressing the truth. (*Carlisle* v. *Norris*, 215 N. Y. 400.) The engineer testifies that, when he first saw the intestate, she looked to him to be near the center or easterly end of the bridge; as soon as he saw her he sounded the whistle and simultaneously moved his brake lever to " service " and immediately, practically

with the same movement, moved it to "emergency." There was frost on the rails, rendering them slippery and preventing the friction between wheels and rails without which the brakes cannot be effective. The intestate was struck when about 15 feet from the east end of the bridge. She apparently "wasn't paying any attention;" evidently she had not looked back. The engineer, when he saw her, did not think she could reach the easterly end of the bridge and he did all he could to save her life. When he first saw the intestate he estimates that he was about 300 feet east of T-37 and that his train was going between twenty-five and thirty-five miles per hour. Accepting these estimates she was about 900 feet ahead of him and his train was then moving 36 feet per second. At the distance, being directly back of her, he could not correctly locate her position instantly. It would require some appreciable time to comprehend the situation and the danger; but the engineer acted immediately. Plaintiff's witness Dettman says that using the service brake first diminished the air pressure when the emergency brake was applied, but he says that this, if a mistake, was only a natural mistake for a man to make; that he would be likely to do it himself. It is evident that the engineer followed his best judgment and acted as promptly as any man under like circumstances could be expected to act. Surely we will not assume that he willingly ran down this woman. Nor can it be said that the accident would have been avoided had he applied the emergency brake before the service brake. The two applications followed, one immediately after the other, and yet the engine ran 300 feet after striking the intestate. There was but a second or two between the application of the service and the emergency brakes, during which time the engine had run less than 100 feet. Considering the frost on the rails, the fact that the sander did not work, that there was but one brake flange on the wheels, we have a satisfactory explanation why he was unable to stop his train after he saw the intestate and before the engine struck her. As stated in the former opinion (p. 249): "I cannot see where he can be charged with even a faulty judgment. Acting with promptness and in accordance with his best judgment, doing what he could to avert the accident, but failing, he should not be chargeable with the death of this girl."

In our former opinion we considered a number of errors in rulings by the court and, although we found that the evidence disclosed no negligence, on account of the errors, we reversed the judgment and granted a new trial, giving the plaintiff another opportunity to furnish evidence sufficient to sustain a charge of negligence. Upon the second trial the plaintiff has again failed.

There were errors in rulings upon this second trial, which would require a reversal of the judgment, but, because we think there is no evidence to justify the finding that the engineer was negligent, we conclude that the judgment should be reversed and the complaint dismissed, with costs.

All concur.

Judgment and order reversed on the law and complaint dismissed, with costs.