PAULINE E. TRYON, as Executrix, etc., of CLARENCE R. TRYON, Deceased, Respondent, *v.* JOHN S. WILLBANK and Others, Appellants.

Fourth Department, January 21, 1932.

*William H. Harding,* for the appellants Estabrook and Dukelow.

*Jesse E. Kingsley,* for the appellants Willbank and Ziorjen.

*Charles J. Yorkey,* for the respondent.

EDGCOMB, J. This is a negligence action. Plaintiff's intestate was killed when a Chevrolet truck, in which he was riding, and which was owned by the defendant Estabrook and driven by the defendant Dukelow with the owner's consent, collided with an Auburn sedan, owned by the defendant Ziorjen, and driven by the defendant Willbank with the acquiescence of the former. The accident happened on the Genesee turnpike some six miles east of Syracuse, and two miles west of the village of Fayetteville. The road at this point is built of concrete, and is thirty feet in width. It runs in a generally easterly and westerly direction, and is bisected by the High Bridge road, which comes into the turnpike at an angle from the southeast. All four defendants have been found responsible for this unfortunate accident.

To prove her case, plaintiff called the defendants Dukelow and Willbank. Dukelow testified that he was driving westerly along the Genesee turnpike around twenty-five or thirty miles an hour; that he was traveling on his right-hand side of the road, and upon the northerly of the three strips of concrete at this point; that as he approached the intersection with the High Bridge road he noticed

Ziorjen's car coming east along the turnpike on the center strip of concrete; that when the two cars got about opposite each other Willbank suddenly turned to his left, and crashed into the left side of the Estabrook car, and that decedent was thrown out and killed.

If this story is true, neither Estabrook nor Dukelow could be charged with neglect in the operation of this truck. Dukelow was on his right-hand side of a road where he should have been; he had accorded Willbank ample space to pass in safety; he was not insisting upon his half of the road; there was no occasion for any warning signal on his part; he was not traveling at an excessive rate of speed, and if he had been, his speed would have had nothing to do with the accident. Dukelow's version of the transaction, however, makes a clear question of fact as to Willbank's and Ziorjen's negligence.

Mr. Willbank told an entirely different story. If he is to be believed, he was traveling easterly along the turnpike at twenty miles an hour, and was keeping well to his right-hand side of the road; as he approached the intersection of the High Bridge road he noticed a car coming out of that highway at a rapid rate of speed; the car did not stop, although the Superintendent of Public Works had erected a sign at the intersection requiring drivers of vehicles to bring their cars to a full stop before entering the State highway; the driver cut directly in front of the witness, and turned into the turnpike; Willbank put on his brakes, and turned to his left to avoid the accident, but crashed into the Estabrook car; the collision occurred in the middle of the highway.

If this was the way the accident happened, the jury would have been amply justified in finding Dukelow negligent. They were not obligated, however, to absolve Willbank and Ziorjen from fault. Willbank was approaching this intersection at twenty miles an hour, without reducing his speed; he saw the Estabrook car, which was approaching from his right at a rapid rate of speed, when he was sixty or seventy feet away, yet he failed to slow down or to give any warning of his approach; he did not apply his brakes until he was about twenty feet from the truck, and when it was too late to avoid the accident. On his own story we think that the jury would have been justified in finding that Willbank failed to operate his car in a careful and prudent manner, and at such a rate of speed as not to endanger the life or limb of plaintiff's intestate.

Plaintiff presented other evidence which corroborates, to a greater or lesser degree, the respective stories of these parties.

By calling Dukelow and Willbank to prove her case, the plaintiff

presented them to the jury as worthy of belief. (*Hanrahan* v. *New York Edison Co.*, 238 N. Y. 194, 197; *Potts* v. *Pardee*, 220 id. 431, 433; *Pollock* v. *Pollock*, 71 id. 137, 152; *Capitula* v. *N. Y. C. R. R. Co.*, 213 App. Div. 526, 528; affd., 241 N. Y. 614; *Maher* v. *Benedict*, 123 App. Div. 579, 581.)

While she could not directly impeach either of these witnesses, plaintiff was not bound by their evidence, but was at liberty to prove by other testimony that the material facts relating to the issue involved were different from those testified to by either Dukelow or Willbank. (*Becker* v. *Koch*, 104 N. Y. 394, 402, 403; *People* v. *DeMartini*, 213 id. 203, 214; *Vollkommer* v. *Cody*, 177 id. 124, 130.)

The burden rests upon the plaintiff to prove by a fair preponderance of the evidence that each of the defendants whom she seeks to hold liable has been guilty of negligence which caused the death of her intestate. This she has failed to do so far as the defendants Estabrook and Dukelow are concerned, if the jury found that they were approaching on the Genesee turnpike. Plaintiff cannot recover against Estabrook and Dukelow unless the evidence shows that decedent's death was occasioned by their negligence. On respondent's own testimony the precise cause of the accident was left to conjecture. So far as the defendants Estabrook and Dukelow are concerned, it may as reasonably be attributed to acts for which they are in no way to blame as to fault on their part. It is not sufficient for the plaintiff to show that the accident might have been caused by the negligence of Estabrook and Dukelow, when she has produced other evidence, the credibility of which she vouches for, from which the jury, with equal propriety, could find that decedent's death was occasioned by causes for which such defendants were not responsible. (*Scharff* v. *Jackson*, 216 N. Y. 598; *White* v. *Lehigh Valley R. R. Co.*, 220 id. 131; *Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 id. 90; *Taylor* v. *City of Yonkers*, 105 id. 202; *Searles* v. *Manhattan R. Co.*, 101 id. 661; *Baulec* v. *N. Y. & Harlem R. R. Co.*, 59 id. 356, 366; *Losie* v. *D. & H. Co.*, 142 App. Div. 214; *Huff* v. *American Fire Engine Co.*, 88 id. 324.)

Both versions of the accident, as testified to by plaintiff's witnesses, cannot be correct. One must be wrong. All this evidence was submitted to the jury, and they were permitted to take their choice as to which story they believed. They were not told that Estabrook and Dukelow could not be held liable, if the accident happened as detailed by the latter. The verdict was a general one. It is impossible, therefore, to determine which version the jury credited. If they accepted Dukelow's account of the accident, there is no evidence to sustain the verdict as to

him or to the owner of the car which he was driving. The judgment against these two defendants must, therefore, be reversed. (*Piper* v. *New York State Railways*, 185 App. Div. 184, 188; *Hawn* v. *Malcolm*, 171 id. 120; *Rossenbach* v. *Supreme Court Ind. Order of Foresters*, 116 id. 565, 567; *Pettit* v. *Pettit*, 149 id. 485, 488; *Rosenstock* v. *Metzger*, 136 id. 620; *Perham* v. *Cottle*, 98 Misc. 48, 51; affd., 178 App. Div. 949; *Jennings* v. *Degnon Contracting Co.*, 165 id. 248, 251.)

Difficulties of this kind may often be avoided by taking a special verdict instead of a general one, sending to the jury questions covering all possible issues, as provided by section 459 of the Civil Practice Act. The work of the appellate courts would be lightened, and retrials would many times be obviated, if the trial courts would more often follow such practice.

We find no error in the ruling of the trial court, excluding the proffered evidence that Willbank's operator's license had been suspended by the Deputy Commissioner of Motor Vehicles as a result of this accident. Unless this evidence was competent, its receipt would have been highly prejudicial to both Willbank and Ziorjen.

Section 71 of the Vehicle and Traffic Law gives to the Commissioner of Motor Vehicles, or to any person deputized by him, the right, in his discretion, to suspend or revoke one's license to drive a motor vehicle. . One of the reasons justifying such action is such gross negligence in the operation of a motor car as to show a reckless disregard for life or property of others.

While the hearing in such a proceeding may be said to be quasi-judicial, the act of the Commissioner is an administrative and not a judicial one. It need not be founded on common-law proof. (*People ex rel. Albrecht* v. *Harnett*, 221 App. Div. 487.)

Such a suspension or revocation is not a judicial determination of incompetency on the part of the operator whose license to operate a motor vehicle is suspended or revoked. Neither can it be said to be competent evidence of the operator's negligence in any particular instance.

Neither is such a decision of the Commissioner competent evidence affecting the credibility of the operator as a witness. The suspension or revocation of one's license to drive an automobile does not involve any moral turpitude; it does not necessarily indicate that the party who has thus been deprived of his right to operate a motor vehicle has been guilty of a crime. To properly impeach a witness, evidence, which is irrelevant to the issue, must be such as will clearly affect the moral character of the witness, or his credibility.

A witness may not be asked on cross-examination if he has ever

been arrested (*People* v. *Crapo*, 76 N. Y. 288); nor if he has been indicted (*Ryan* v. *People*, 79 id. 593, 599; *Van Bokkelen* v. *Berdell*, 130 id. 141, 145); nor if he has been charged with " crooked driving " and has been taken out of his sulky at a race track for that reason (*Lindsley* v. *Miller*, 3 App. Div. 127); nor whether he has been fined ten days' pay by the police commissioner after a hearing for dereliction of duty or infraction of rules (*People* v. *Sullivan*, 34 App. Div. 544); nor whether a judgment in a civil action has been recovered against him to recover a fine imposed by a city ordinance for keeping a house of ill-fame (*Arhart* v. *Stark*, 6 Misc. 579); nor if he has been expelled from a fire department (*Nolan* v. *Brooklyn City & N. R. R. Co.*, 87 N. Y. 63, 68).

Appellants urge that the verdict is excessive. The jury found for the plaintiff in the sum of $13,943.10. The trial court reduced the verdict to $10,000. We think that it should be reduced still further.

Section 132 of the Decedent Estate Law prescribes that the amount of damages to be awarded a plaintiff in an action of this character is such a sum as the jury, or the court if the case is tried without a jury, deems to be a fair compensation for the pecuniary injuries resulting from decedent's death and those for whose benefit the action is brought. Such damages cannot be computed by any mathematical formula. We recognize that this is a question peculiarly adapted for solution by a jury. Yet there is a limit beyond which such a tribunal should not be allowed to go. The court is charged with the duty of seeing that such limit is not exceeded.

Decedent left a widow, and no children. He was nearly seventy years of age at the time of his death. His widow was sixty-two years old. He was a carpenter, but had not worked at his trade for several years. The year prior to his death he had worked as an assistant gardener for Mr. Estabrook for about six months at the rate of twenty-five dollars per week. The rest of the year he was unemployed. The day before this accident he again entered Mr. Estabrook's employ at the same salary for the summer months. He had reached a time in life when he was slowing down, and when his earning capacity was diminishing. His expectancy of life was nine and forty-eight one-hundredths years. By no stretch of the imagination can it be said that the legal damages to which the plaintiff is entitled amount to $10,000. We think that $6,000 would be an ample award in this case.

For the reasons stated, we think that as to the defendants Estabrook and Dukelow the judgment appealed from should be reversed and a new trial granted, and as to the defendants Willbank and

Ziorjen the judgment should be reversed and a new trial granted, unless the plaintiff stipulates to reduce the verdict to $6,000, in which event the judgment should be affirmed.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

As to the defendants Willbank and Ziorjen, judgment and order reversed on the facts and a new trial granted, with costs to the appellants to abide the event, unless the plaintiff shall, within ten days, stipulate to reduce the verdict to the sum of $6,000 as of the date of the rendition thereof, in which event the judgment is modified accordingly and, as so modified is, together with the order, affirmed, without costs of this appeal to either party. As to the defendants Estabrook and Dukelow, judgment and order reversed on the facts and a new trial granted, with costs to said appellants to abide the event.