(No. 6053.   November 2, 1933.)

W. C. HALL, Appellant, v. F. LEE JOHNSON, Commissioner of Agriculture of the State of Idaho, Respondent.

[27 Pac. (2d) 674.]

Chapman & Chapman, for Appellant.

Bert H. Miller, Attorney General, and Leo M. Bresnahan, Assistant Attorney General, for Respondent.

MORGAN, J.—This is a suit to procure an injunction against respondent, who is commissioner of agriculture of Idaho, restraining him from enforcing against appellant the sections of the code hereinafter quoted.

It is alleged in the amended complaint that appellant is a citizen and resident of Murtaugh, Twin Falls county, Idaho, where he has been engaged in the general mercantile business, and, during 1932 was and for some time prior thereto had been, "engaged in the business of buying for the purpose of resale or sale and of selling or offering to sell, buying or offering to buy, negotiating or offering to negotiate, the sale or purchase of fruits and vegetables in carload lots, and particularly including potatoes, from growers thereof or dealers therein, for cash and in some instances evidencing the payment thereof by checks or drafts drawn and signed by him upon banks within the State of Idaho, and in other states, payable to and delivered by him to the vendors of such farm produce."

It is further alleged that respondent has informed appellant that the acts done and committed by him as aforesaid, are in violation of the statute of Idaho relating to farm

produce brokers, farm produce dealers and farm produce commission merchants, in that he has not obtained a license and given a bond for 1932, as provided by said statute, and that respondent threatens to and will, unless restrained therefrom, cause a criminal complaint to be filed and a warrant of arrest to be issued against appellant, and will cause him to be prosecuted for violation of said statute.

The complaint is based on the theory that the statute requiring farm produce brokers, dealers and commission merchants to give bonds and procure licenses as a condition precedent to engaging in business is unjust, unreasonable, discriminatory, harsh, oppressive and arbitrary and violative of art. 1, sec. 1 of the constitution of Idaho, and sec. 1 of the fourteenth amendment of the constitution of the United States.

One of appellant's grounds of complaint that the statute is unjust, unreasonable and arbitrary is that it requires him to obtain a license and give a bond as a farm produce broker, dealer or commission merchant although he purchases for cash and makes immediate payment in full on delivery and, he contends, to require him to obtain such license and furnish such bond compels him to do a useless and futile thing, since such transactions do not require the regulation of a license and there is no one to be protected by the bond.

A demurrer to the amended complaint was sustained, appellant refused to further plead and judgment was entered dismissing the action. This appeal is from the judgment.

Among appellant's contentions is that the statute under consideration cannot be made to apply to him, a cash purchaser of farm products, and if construed to be applicable to such a purchaser said statute infringes on and impairs his inalienable right to acquire, possess and protect property, guaranteed to him by art. 1, sec. 1 of the constitution of Idaho, which provides:

"All men are by nature free and equal, and have certain inalienable rights, among which are enjoying and defending life and liberty; acquiring, possessing and protecting property; pursuing happiness and securing safety."

The contention is not made in respondent's brief that, as a general rule, a suit in equity may not be maintained to prevent a criminal prosecution, and we will proceed on the theory that the case is within one of the exceptions mentioned in *Nims v. Gilmore*, 17 Ida. 609, 107 Pac. 79.

Respondent contends that a statute which requires a farm produce broker, dealer or commission merchant to give a bond and procure a license, although he purchases for cash or checks and drafts, the equivalent of cash, is constitutional and valid because it is within the police power of the state.

I. C. A., secs. 22–1002, 22–1004, 22–1005, 22–1008 and 22–1015, are as follows:

Sec. 22–1002. "A farm produce broker, farm produce dealer, or farm produce commission merchant within the meaning of this act is any person who shall contract to purchase, or who shall handle for compensation or promise thereof, for the purpose of resale or sale or who shall handle on account of or as an agent for another, any farm produce as herein defined, or who sells or offers for sale, who buys or offers to buy, negotiates or offers to negotiate the sale or purchase of fruits, vegetables and products of the apiary or any interest therein, either directly or indirectly. The provisions of this act shall not apply to any person who grows or produces farm produce, or purchases farm produce for his own use, nor to any person, who, being the owner of such farm produce, sells, exchanges, or otherwise disposes of it for his own account, nor to any person who makes purchase of such farm produce for the purpose of retail sale within the state, and who does resell such farm produce in less than carload lots and in the retail trade within the state."

Sec. 22–1004. "The word 'consignor' as used in this act shall be deemed to be any person who has by contract sold and delivered in car lot or lots other than for cash in hand, any farm produce as the same is defined in this act, to any farm produce broker, farm produce dealer, or farm produce commission merchant, or any person who has by contract

delivered in car lot or lots farm produce as the same is defined in this act to any farm produce broker, farm produce dealer or farm produce commission merchant to be sold by such broker, dealer or commission merchant for compensation either as agent or otherwise.''

Sec. 22–1005. ''No person shall act as farm produce broker, farm produce dealer, or farm produce commission merchant within the meaning of this act without first having obtained a license and given a bond as hereinafter described. Such license shall expire on June 1st of each year and must be renewed yearly.''

Sec. 22–1008. ''The bond herein required to be given shall be conditioned that said applicant will conduct and transact his business honestly and without fraud of any kind or nature and will comply with the provisions of this act and all the laws of the state of Idaho. Any person injured by dishonesty, fraud or violation of the provisions of this act or of the laws of the state of Idaho, committed by any person licensed under the provisions of this act and while engaged in such business shall have a right of action on such bond for his damages not exceeding the amount of the bond.''

Sec. 22–1015. ''The violation of any of the provisions of this act shall constitute a misdemeanor, any person upon being convicted of such violation shall be punished according to law.''

Section 22–1008 was amended in 1933, Sess. Laws, 1933, chap. 130, p. 200, but this suit is for the purpose of enjoining a prosecution for alleged violation of the law in 1932, and that amendment has no bearing on the question before us.

These sections were originally enacted as parts of Idaho Sess. Laws, 1927, chap. 236, p. 351, and in that portion of the act which is now sec. 22–1002, and which exempts certain classes of persons from the operation of the law, was included ''any person who purchases for cash and makes immediate payment in full upon delivery.'' That exemption was eliminated from the law by an amendment appear-

ing in the 1929 Sess. Laws, chap. 180, p. 318, and, as amended, was incorporated in the code as above quoted.

■■ Was it the intention of the legislature, in adopting that section of the statute, as amended, to require one who buys farm produce, in carload lots, outright and pays for it on delivery, to procure the license and give the bond mentioned in sec. 22–1008? If the legislature did so intend, is such regulation and requirement within the police power of the state?

The fact that the law as originally enacted expressly exempted cash buyers from its operation, which exemption was eliminated when it was amended, is persuasive that the legislature intended thereby to require such buyers to procure a license and give a bond. However, the express exemption may have been eliminated on the theory that it was unnecessary because such buyers would not be subject to the provisions of the law even though the express exemption had not been made. We would be inclined to adopt this theory, from an analysis of the statute, even in the absence of the constitutional question with respect to the police power.

An examination of sec. 22–1005 will show that only those who act as farm produce brokers, dealers or commission merchants, within the meaning of the statute, are required to procure licenses and give bonds. Section 22–1002 contains the following: "The provisions of this act shall not apply to any person who grows or produces farm produce, or purchases farm produce for his own use, nor to any person, who, being the owner of such farm produce, sells, exchanges, or otherwise disposes of it for his own account."

It is clear the legislature intended to exempt other owners of farm produce than those who grow or produce it. If this were not so the exemption of "any person, who, being the owner of such farm produce, sells, exchanges, or otherwise disposes of it for his own account," would not have been expressly made after growers and producers had been exempted. One who purchases and pays for such produce is the owner of it within the meaning of that section, and the

provisions of the law under consideration do not apply to him.

We recently had this law under consideration in *Lebrecht v. Union Indemnity Co.*, *ante*, p. 228, 22 Pac. (2d) 1066, and it is said in the majority opinion:

"Not all consignors are protected by the act. If the farm produce, as defined, is delivered to the broker, dealer, or merchant for cash in hand paid, such party delivering is not a consignor, as defined by section 22–1004, and is not to be protected by the bond provided for in section 22–1006, as the consignor contemplated in the last-named section is the only one as defined by the act, which would exclude any other. Therefore, if a consignor, who is paid cash in hand, for the produce delivered, is defrauded by the broker, dealer, or merchant, he would have to seek his remedy, not as against the surety, but against the party defrauding. If the construction placed by respondent was adopted, any consignor, or any one else, could hold the surety for a violation of his legal rights, which is contrary to the letter or spirit of the act. . . . .

"A consignor, as defined, parts with his produce in large quantities, by selling and delivering the same to the broker, dealer, or merchant without getting his pay for the same."

There is nothing in the concurring opinion in that case in conflict with this view of the law.

Assuming the business of buying, on credit, the farm products mentioned in the statute, or handling them on commission, requires the regulation of a license and the security of a bond that the purchaser or commission merchant will honestly perform his contract, it does not follow that such regulation and security are required in case of one who buys such products and pays for them on delivery. To compel a purchaser, who pays in full for produce on delivery, to procure a license and give a bond is to subject him to an unnecessary and entirely useless expense.

This court said in *McDonald v. Doust*, 11 Ida. 14, 81 Pac. 60, 69 L. R. A. 220:

"The constitution never contemplates any vain or useless thing. Acts inconsistent with the spirit of that document are as much prohibited by its terms as are acts directly enumerated and forbidden therein."

That statement is quoted with approval in *Atkinson v. Board of Commrs.*, 18 Ida. 282, 108 Pac. 1046, 28 L. R. A., N. S., 412. In the last-mentioned case the court also said:

"With the wisdom of legislation we have nothing to do, but it is our duty to look to the results an act will and is intended to accomplish and determine whether those results will be violative of the constitution."

In *State v. Armstrong*, 38 Ida. 493, 225 Pac. 491, 33 A. L. R. 835, this court said:

"A calling may not be prohibited by the legislature unless (1) it is inherently injurious to the public health, safety or morals or (2) has a tendency in that direction."

In that case appellant had been convicted of violating the law providing for the licensing of physicians and surgeons. The court reversed the judgment of conviction and said:

"To require a chiropodist to obtain the education and license of a physician and surgeon, an osteopath or a chiropractor, is not a reasonable regulation and is utterly unnecessary for the protection of the public. So far as it affects the practice of chiropody, the act is unconstitutional and void."

That reasoning applies to the question before us in this case. To require a cash buyer to procure the license and give the bond required of a buyer on credit, or of a commission merchant, who consigns the property of others to market for sale on an agreement to account for the proceeds, less his commission, is an unnecessary and unreasonable regulation.

The supreme court of Illinois, in *Chicago v. Netcher*, 183 Ill. 104, 55 N. E. 707, 75 Am. St. 93, 48 L. R. A. 261, said:

"Liberty includes the right to pursue such honest calling or avocation as the citizen may choose, subject only to such restrictions as may be necessary for the protection of the

public health, morals, safety, and welfare. The state, for the purpose of public protection, may, in the proper exercise of the police power, impose restrictions and regulations; but the right to acquire and dispose of property is subject only to that power. The individual may pursue, without let or hindrance from anyone, such callings or pursuits as are innocent in themselves, and not injurious to the public. These are fundamental rights of every person living under this government. The legislature can neither, by an enactment of its own, interfere with such rights, nor authorize a municipal corporation to do so. . . . . .

"In order to sustain legislative interference with the business of the citizen by virtue of the police power, it is necessary that the act should have some reasonable relation to the subjects included in such power. If it is claimed that the statute or ordinance is referable to the police power, the court must be able to see that it tends, in some degree, towards the prevention of offenses, or the preservation of the public health, morals, safety, or welfare. It must be apparent that some such end is the one actually intended, and that there is some connection between the provisions of the law and such purpose. If it is manifest that the statute or ordinance has no such object, but, under the guise of a police regulation, is an invasion of the property rights of the individual, it is the duty of the court to declare it void."

See, also, *Hyatt v. Blackwell Lbr. Co.*, 31 Ida. 452, 173 Pac. 1083, 1 A. L. R. 1663; *Ex parte Jentzsch*, 112 Cal. 468, 44 Pac. 803, 32 L. R. A. 664; *Meyer v. Nebraska*, 262 U. S. 390, 43 Sup. Ct. 625, 67 L. ed. 1042, 29 A. L. R. 1446; *People v. Ringe*, 197 N. Y. 143, 90 N. E. 451, 18 Ann. Cas. 474, 27 L. R. A., N. S., 528; *Ritchie v. People*, 155 Ill. 98, 40 N. E. 454, 46 Am. St. 315, 29 L. R. A. 79; *State ex rel. Kempinger v. Whyte*, 177 Wis. 541, 188 N. W. 607, 23 A. L. R. 67; *Ex parte Whitwell*, 98 Cal. 73, 32 Pac. 870, 35 Am. St. 152, 19 L. R. A. 727.

In *Northern Pacific Ry. Co. v. Gifford*, 25 Ida. 196, 136 Pac. 1131, the rule is announced that where a statute would be unconstitutional as applied to a certain class of business

and cases arising thereunder and constitutional as applied to another class, it should be held to have been intended by the legislature to apply to the latter class and not the former. See, also, *State v. Morris,* 28 Ida. 599, 155 Pac. 296, L. R. A. 1916D, 573; *Hindman v. Oregon Short Line R. R. Co.,* on rehearing 32 Ida. 140, 178 Pac. 839.

Applying that rule to the statute under consideration, we hold it does not require those purchasing farm produce for cash and paying for it on delivery to give a bond and procure a license.

Appellant has attacked the statute on a number of grounds not herein mentioned, but the conclusion reached renders a decision of the questions thus presented unnecessary.

The judgment is reversed and the cause is remanded to the trial court with direction to overrule the demurrer to the complaint. No costs allowed.

Budge, C. J., and Givens, Holden and Wernette, JJ., concur.