(No. 6434.   January 12, 1938.)

STATE, Respondent, v. KENNETH KOUNI, Appellant.

[76 Pac. (2d) 917.]

Paul W. Hyatt, for Appellant.

J. W. Taylor, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

BUDGE, J.—On February 16, 1936, appellant and one Francis Blake were involved in a collision resulting in the

unfortunate death of one Bernice Thomas. Subsequently a coroner's jury was duly impaneled and returned a verdict finding, in effect, that Bernice Thomas met her death as a result of an accident which occurred February 16, 1936, on the Lewis and Clark highway, due to the criminal negligence of appellant while driving his car at an excessive rate of speed, and the contributory negligence of Francis Blake, the driver of a sled, due to not having his vehicle equipped with the necessary lights while operating the same on the state highway. The verdict of the coroner's jury, accompanied by a report of a traffic officer, covering the details of the accident, was furnished to the Commissioner of Law Enforcement. Upon this information the commissioner suspended appellant's driver's license on March 19, 1936, for a period of one year. Thereafter appellant was duly informed against and charged with the crime of involuntary manslaughter, the charging part of the information being as follows:

" .... the said defendant, Kenneth Kouni, then and there being, did then and there while engaged and occupied in operating a motor vehicle on the public highway of the state of Idaho .... did run and operate said vehicle so negligently and carelessly, and without due caution, by then and there driving at a high rate of speed and in a manner to endanger the lives and limbs of persons upon said highway, and on the left side of said highway (his left). And did drive the said motor vehicle into and upon a sleigh in which one Bernice Thomas, a human being, was riding; and injured the said Bernice Thomas so that she died from said injuries on or about the 17th day of February, 1936."

Appellant, on April 30, 1936, was duly and regularly acquitted of said charge by a jury. Thereafter appellant made application to the commissioner for the reinstatement of his driver's license under the provisions of section 30, subdivision (b), chapter 88, 1935 Session Laws. A hearing before the commissioner was thereafter had, appellant reserving and not waiving the question of the jurisdiction of the commissioner to hear and determine the question of the suspension, revocation or reinstatement of his driver's license, and in support of his contention relied upon the unconstitutionality of sec-

tion 30, subdivision (a) (2), and subdivision (b), chapter 88, *supra*. Subsequent to the hearing had before the commissioner pursuant to subdivision (b), section 30, chapter 88, *supra*, the commissioner, on June 10, 1936, denied appellant's application for reinstatement of his driver's license and continued the suspension thereof until March 19, 1937.

Appellant by occupation is an automobile salesman, and as such made his livelihood. His work required the driving of automobiles for demonstration purposes. Subsequent to the action of the commissioner, denying appellant's application for restoration of his driver's license, appellant was duly charged by information, as follows:

" . . . . on or about the 10th day of July, 1936, the defendant Kenneth Kouni, did then and there being, willfully, intentionally, knowingly and unlawfully, drive a motor vehicle upon the highways of the state of Idaho . . . . while his Motor Vehicle Operator's License was so suspended. . . . . "

This cause was tried to the court, a jury having been expressly waived, and on December 2, 1936, appellant was adjudged guilty as charged and judgment was thereupon entered, from which this appeal is prosecuted.

One of the main questions raised in this case is the validity of the commissioner's order of suspension of March 19, 1936, and the constitutionality of the law under which the order of suspension was entered. Section 30, subdivision (a), chapter 88, 1935 Session Laws, provides:

"The department is hereby authorized to suspend the license of an operator or chauffeur without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee:

" . . . .

"2. Has been involved as a driver in any accident resulting in the death or personal injury of another or serious property damage;"

Under the foregoing provision the commissioner may arbitrarily or capriciously summarily suspend or revoke a driver's license upon the sole and only ground that the licensee has been involved as a driver in any accident resulting in the death or personal injury of another or serious property dam-

age, although the license may have been absolutely free from negligence, and in no way responsible for the death or personal injury of another or serious property damage. The provision, heretofore quoted, is an abridgment of section 19, Uniform Motor Vehicle Operator's and Chauffeur's License Act, volume 9, Uniform Laws, section 19, page 330, which provides:

"The Department may immediately suspend the license of any person without ·hearing and without receiving a record of conviction of such person of crime whenever the Department has reason to believe:

" . . . .

"2. That such person has, *by reckless or unlawful operation of a motor vehicle, caused or contributed to an accident* resulting in death or injury to any other person or serious property damage."

It will be observed that subdivision 2 of section 30 (a), *supra,* entirely omits the following words:

"by reckless or unlawful operation of a motor vehicle, caused or contributed to"

Under subdivision 2, of section 30 (a), *supra,* in the absence of reckless or unlawful operation of a motor vehicle, the licensee's driver's license may be revoked or suspended by the commissioner, and under a state of facts that would show that the licensee was not reckless, that he did not unlawfully operate the motor vehicle, that he in no way contributed by his negligence to the accident, and that he was entirely free from any blame, responsibility or liability for the accident or the result of the accident, resulting in the death or personal injury of another or serious property damage. The commissioner is authorized under the above provision to suspend or revoke the license of the party involved in the accident, innocently and without negligence, and who has not caused or contributed to the accident, as well as to suspend or revoke the license of the party who by reckless or unlawful operation of his motor vehicle, caused or contributed to the accident.

There is no provision in the act for notice or hearing before a court of competent jurisdiction in which the commissioner's

action may be fairly and impartially reviewed. The action of the commissioner may deny to the owner or operator of the motor vehicle the right to the use, in a lawful manner, of his property. Subdivision 1 of the 14th Amendment to the Constitution of the United States provides:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Article 1, section 13 of the Idaho constitution provides:

" . . . . No person shall . . . . be deprived of life, liberty, or property without the due process of law."

For the foregoing reasons we hold that subdivision 2 of section 30 (a), chapter 88, 1935 Session Laws, is in conflict with the constitution of the United States and the constitution of Idaho.

The judgment in this case is reversed.

Holden, C. J., and Ailshie, J., concur.

GIVENS, J., Dissenting.—Appellant, not denying or challenging the facts, appeals herein solely on the asserted unconstitutionality of section 30 (a) 2, chapter 88, Session Laws, 1935, as violative of the provisions of article 1, section 1, article 1, section 13, article 2, section 1, and article 5, section 13 of the Idaho constitution, and section 1 of the Fourteenth Amendment to the constitution of the United States, on substantially four grounds which we will hereafter consider. The majority opinion apparently holding the statute unconstitutional because, as interpreted therein, depriving appellant of his property without due process.

There can be no question that the purpose of the statute under consideration, in its entirety, was an attempt to bring about greater safety in the driving of automobiles, and likewise we must presume the legislature intended to pass a constitutional statute and every legitimate intendment should be resolved in favor of its constitutionality. (*Noble v. Bragaw,* 12 Ida. 265, 85 Pac. 903; *In re Gale,* 14 Ida. 761, 95 Pac. 679;

*Grice v. Clearwater Timber Co.,* 20 Ida. 70, 117 Pac. 112; *Continental etc. Inv. Co. v. Hattabaugh,* 21 Ida. 285, 121 Pac. 81; *Northern Pac. Ry. Co. v. Gifford,* 25 Ida. 196, 136 Pac. 1131; *State v. Morris,* 28 Ida. 599, 155 Pac. 296, L. R. A. 1916D, 573; *Packard v. O'Neil,* 45 Ida. 427, 262 Pac. 881, 56 A. L. R. 317; *Sanderson v. Salmon River Canal Co., Ltd.,* 45 Ida. 244, 263 Pac. 32; *Chambers v. McCollum,* 47 Ida. 74, 272 Pac. 707; *Williams v. Baldridge,* 48 Ida. 618, 284 Pac. 203; *Bannock County v. Citizens B. & T. Co.,* 53 Ida. 159, 22 Pac. (2d) 674; *City of Idaho Falls v. Pfost,* 53 Ida. 247, 23 Pac. (2d) 245; *Hall v. Johnson,* 53 Ida. 667, 27 Pac. (2d) 674; *J. C. Penney Co. v. Diefendorf,* 54 Ida. 374, 32 Pac. (2d) 784; *Garrett Transfer etc. Co. v. Pfost,* 54 Ida. 576, 33 Pac. (2d) 743; *Johnson v. Diefendorf,* 56 Ida. 620, 57 Pac. (2d) 1068.)

The latest decisions are unanimously to the effect that the driving of an automobile upon the highways is not a property right but a privilege which may be denied or regulated under the police power with the view to control the accidents which are increasingly taking such a toll of life and property. (*Commonwealth v. Funk,* 323 Pa. 390, 186 Atl. 65, at 67; *Watson v. State Division of Motor Vehicles,* 212 Cal. 279, 298 Pac. 481, at 482–3.) Appellant asserts the use of an automobile is essential in his business and his means of livelihood and that as a valuable property right it may not thus be taken from him. Human lives and safety of persons are likewise valuable and certainly in this enlightened age and generation property rights should not be placed above human rights.

" . . . . The right to operate them (automobiles) in public places is not a natural and unrestricted right, but a privilege subject to reasonable regulation, under the police power, in the interest of the public safety and welfare. *Hendrick v. Maryland,* 235 U. S. 610, 622, 35 Sup. Ct. 140, 50 L. ed. 385. . . . . "

(*Watson v. State Division of Motor Vehicles, supra; Ex parte Von Perhacs,* 190 Cal. 364, 212 Pac. 689; *Sleeper v. Woodmansee,* 11 Cal. App. (2d) 595, 54 Pac. (2d) 519; *People v. Cohen,* 128 Misc. 29, 217 N. Y. Supp. 726; *Ruggles v. State,* 120 Md. 553, 87 Atl. 1080; *Garford Trucking v. Hoff-*

*man,* 114 N. J. L. 522, 177 Atl. 882, at 887, following *La-Plante v. State Board of Public Roads,* 47 R. I. 258, 131 Atl. 641, and Huddy on Automobiles, 7th ed., p. 81; *Burgess v. City of Brockton,* 235 Mass. 95, 126 N. E. 456; *State v. Price,* (Ariz.) 63 Pac. (2d) 653, 108 A. L. R. 1156; 5 Am. Jur. 593, sec. 157; 1–2 Huddy Cyc., Automobiles, p. 481.) While appellant cites authorities to the effect that automobiles are not *per se* dangerous, when in use, by reason of the human element involved in their operation they are potentially homicidal as recognized by the decisions, 42 C. J. 615, and proved by the facts. The Traveler's Insurance Company of Hartford Connecticut shows the increase in deaths from automobile accidents during the last five years to be: Deaths in 1932, 29,196; 1933, 31,078; 1934, 35,769; 1935, 36,100; with 864,800 accidents in 1936, 36,800 killed, and 967,840 people injured, in 1936. (1937 The World Almanac, page 322.)

"The ever-increasing use of the highways by those operating motor vehicles is attended by serious dangers of bodily harm and death. In an effort to minimize this menace to public safety, a state as an exercise of the police power may prescribe uniform regulations covering the ownership and operation of these vehicles. (cases) One of the common requirements is that of registration of motor vehicles, and there cannot be the slightest doubt of the validity of this requirement. *Hendrick v. Maryland, supra.* So too as to the requirement of a license for chauffeurs and operators. . . . . " (*Munz v. Harnett,* 6 Fed. Supp. 158, at 159–160.)

(*In re Opinion of the Justices,* 251 Mass. 569, 147 N. E. 681; *Rutherford v. City of Nashville,* 168 Tenn. 499, 79 S. W. (2d) 581, at 587; *Garford Trucking v. Hoffman, supra.*)

Appellant's first ground of attack is that under section 30 (a) 2, *supra,* a driver's license may be suspended when he is involved in an accident regardless of whether he was at fault or to blame, hence penalized because of an innocent act, because the legislature left out of our statute the words "by reckless or unlawful operation and caused or contributed to an accident" contained in the Uniform Act from which our statute was apparently taken.

The majority, without defining or analyzing the word "involved," or what the legislature intended thereby, predicates its holding of unconstitutionality on appellant's bare and unsupported contention.

While the court may not amend a statute or supply words, it will if possible give a meaning to words used by the legislature which will not lead to a ridiculous or absurd result, or contrary to the evident intention and purpose of the legislature, and if words are capable of being defined so as to accomplish the evident legislative purpose, the court will do so. (*In re Segregation of School Dist. No. 58,* 34 Ida. 222, 200 Pac. 138; *In re Moore,* 38 Ida. 506, 224 Pac. 662; *Hartman v. Meier,* 39 Ida. 261, 227 Pac. 25; *Intermountain Title Guar. Co. v. Egbert,* 52 Ida. 402, 16 Pac. (2d) 390.) The cardinal principle of statutory construction is to save and not to destroy. (*National Labor Rel. Board v. Jones & Laughlin S. Corp.,* 301 U. S. 1, 57 Sup. Ct. 615, 81 L. ed. 893, 108 A. L. R. 1352.)

The words "involve" and "involved" have been defined as follows: "To envelop; surround; to draw into an entanglement or complication; to include or contain; implicate." (Webster's New International Dictionary.) "Involve," "To envelop or (in later use, more usually) entangle (a person) in trouble, difficulties, perplexity etc., to embarass; to engage in circumstances from which it is difficult to withdraw; to implicate in a charge or crime; to cause or prove a person to be concerned in it. "Involved": "of persons, their actions etc. not straightforward and open, underhand, covert, crooked." (The New English Dictionary, Oxford, pages 465, 466) "Involve is a stronger word than implicate, denoting more complete entanglement." (Standard dictionary).

From these definitions it is clearly evident the legislature intended the word "involved" to carry with it the meaning and element of causative action and at least, though slight, wrongdoing or negligence. The legislature had the right to go further than the Uniform Law and grades of negligence are recognized, for instance liability to a guest rests on gross negligence, I. C. A., sec. 48–901; there is ordinary negligence, and criminal negligence, I. C. A., secs. 17–101, 17–114. In

other words, the legislature desired to have the Department of Law Enforcement given the utmost power possible to revoke a license of a driver who has to the slightest extent caused an accident, thus the statute does not leave uncontrolled, without guide or limitation, the action of the Commissioner in determining whose license might be revoked. We find support for this thought in *Butler v. Jersey Coast News Co.*, 109 N. J. L. 255, 160 Atl. 659.

Powers of numerous administrative and executive officials and boards exercising so-called *quasi*-judicial functions in determining facts and applying standards have been upheld under no more definite or certain legislative limitations or boundaries than contained in the act under consideration[1], and also where the hearings are before the board of commission on charges initiated by themselves. (*In re Probasco*, 269 Mich. 453, 257 N. W. 861; *Commonwealth v. Funk, supra; Tryon v. Willbank*, 234 App. Div. 335, 255 N. Y. Supp. 27; *Capitol Taxicab Co. v. Cermak*, 60 Fed. (2d) 608; *Klein v. City of Cincinnati*, 33 Ohio App. 137, 168 N. E. 549; *Garford Trucking v. Hoffman, supra; Commonwealth v. Funk, supra; Keck v. Superior Court*, 109 Cal. App. 251, 293 Pac. 128; *Sleeper v. Woodmansee, supra;* 1–2 Huddy, Cyc. of Automobiles, p. 481, sec. 248; 1 Blashfield, p. 394, sec. 480; Berry Automobiles, vol. 2, p. 253, sec. 2.259.)

Tender solicitude for the claimed property rights of a driver of an automobile so he may be allowed its use, regarded as necessary in his business, though his recklessness and negligence result in causing wanton death, should not outweigh the well established doctrine heretofore announced by this

---

[1] Public Utilities. Enforcement and tribunal. Appeal, I. C. A., secs. 59–501, 59–502, 59–503, 59–508, 59–523, 59–612, 59–615, 59–701. Accountancy, I. C. A., sec. 53–201, subd. 5; Architects, I. C. A., sec. 53–405; Barbers, I. C. A., sec. 53–615; Chiropodists, I. C. A., sec. 53–801; Civil Engineers, I. C. A., secs. 53–1003, 53–1011; Cosmeticians, I. C. A., sec. 53–1216; Real Estate Broker, I. C. A., sec. 53–2212, Commissioner's own motion; Farm Marketing, I. C. A., sec. 22–704, investigate and decide; Farm Produce, I. C. A., sec. 22–1013; Nursery inspection, I. C. A., secs. 22–1501, 22–1502, 22–1503; Bees, I. C. A., sec. 22–1905; Sheep, I. C. A., sec. 24–104; *Soran v. McKelvey*, 57 Ida. 483, 67 Pac. (2d) 906.

court that courts will not anticipate that an executive officer will give to an act a construction obnoxious to the constitution. (*Garrett Transfer etc. Co. v. Pfost*, 54 Ida. 576, 33 Pac. (2d) 743; *Utah Power & Light Co. v. Pfost*, 286 U. S. 165, 52 Sup. Ct. 548, 76 L. ed. 1088, 1939.)

The majority opinion does not directly say there has been any abuse of the right of revocation herein but bases its conclusion of unconstitutionality on a straw man of asserted possible mythical illegal action by the commissioner. If the commissioner should so act illegally the injured defendant would have ample means of protection, as this proceeding sufficiently demonstrates.

The police power is broad and must be given an interpretation in keeping with changing times and conditions, which rule this court has from its inception adhered to with progressive foresight. (*Bacon v. Walker*, 204 U. S. 311, 27 Sup. Ct. 289, 51 L. ed. 499, affirming *Walker v. Bacon*, 11 Ida. 127, 81 Pac. 155, 114 Am. St. 262; *Bown v. Walling*, 204 U. S. 320, 27 Sup. Ct. 292, 51 L. ed. 503, affirming *Walling v. Bown*, 9 Ida. 740, 76 Pac. 318, 2 Ann. Cas. 720; *Jungst v. Baldridge*, 51 Fed. (2d) 379; *Detweiler v. Welch*, 46 Fed. (2d) 71, affirmed 46 Fed. (2d) 75, 73 A. L. R. 1440; *Alliance Trust Co. v. Hall*, 5 Fed. Supp. 285; *Mullen & Co. v. Moseley*, 13 Ida. 457, 90 Pac. 986, 121 Am. St. 277, 13 Ann. Cas. 450, 12 L. R. A., N. S., 394; *State v. Dolan*, 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259; *Ex parte Jacobs*, 13 Ida. 720, 92 Pac. 1003; *Idaho Power & Light Co. v. Blomquist*, 26 Ida. 222, 141 Pac. 1083, Ann. Cas. 1916E, 282; *Ex parte Hinkle*, 33 Ida. 605, 196 Pac. 1035; *State v. Armstrong*, 38 Ida. 493, 225 Pac. 491, 33 A. L. R. 835; *Chambers v. McCollum, supra; Straughan v. City of Coeur d'Alene*, 53 Ida. 494, 24 Pac. (2d) 321.)

Statutes authorizing the suspension of licenses of drivers of automobiles who have failed to satisfy adverse judgments for damages have been sustained against criticism similar to appellant's. True that point, as such, is not before us for consideration but it shows what the courts have considered as having a bearing on what regulations may have a compelling influence on persons to drive carefully and their rea-

soning is pertinent herein; *In re Opinion of the Justices, supra; Munz v. Harnett, supra; Commonwealth v. Funk, supra; Garford Trucking v. Hoffman, supra; Watson v. State Division of Motor Vehicles, supra; State v. Price, supra. Ex parte Lindley,* 108 Cal. App. 258, 291 Pac. 638, cited by appellant as *contra* has been impliedly overruled in *Watson v. State Division of Motor Vehicles, supra,* and expressly following the Watson case in *Sheehan v. Division of Motor Vehicles,* 140 Cal. App. 200, 35 Pac. (2d) 359.

The legislature had the right to consider and exert the coercive curbing influence on a driver in declaring that if he were involved in a negligent or reckless manner in the slightest degree in an automobile accident causing death or serious injury to persons or property, his license would be suspended. One of the curses of regulatory safety measures has been loophole evasion and procrastination which the legislature in this act attempted to abate.

Appellant however asserts the statute allows and the commissioner has exercised arbitrary discrimination under an unlawful delegation of judicial authority. If a license is to be revoked for any cause, initially someone must act. This is an executive or administrative act not judicial in the true sense and similar delegations have been sustained on this theory, not only in this state but quite universally. (*State v. Johnson,* 50 Ida. 363, 296 Pac. 588; *Chambers v. McCollum, supra; Idaho Power & Light Co. v. Blomquist, supra; Speer v. Stephenson,* 16 Ida. 707, 102 Pac. 365; *Keck v. Superior Court, supra; People v. Harnett,* 221 App. Div. 487, 224 N. Y. Supp. 97; *Commonwealth v. Funk, supra; Sleeper v. Woodmansee, supra; Tryon v. Willbank, supra; Klein v. City of Cincinnati, supra; Capitol Taxicab Co. v. Cermak, supra; Garford Trucking v. Hoffman, supra,* at 888:

" . . . . The granting or revocation of a license by a state board similar to the one here in question was held by this court in *People v. Apfelbaum, supra* (251 Ill. 18, 95 N. E. 995), not to be the exercise of judicial power, as that term is understood in reference to the distribution of the powers of government. . . . .

"Nor does the fact that the granting or revocation of a license, under the act, is committed to an administrative officer, who may be authorized to exercise his discretion in so doing, violate any constitutional guaranty. If for good cause the administrative official is satisfied that the license should be revoked, he may, upon proper. proofs so do. . . . ."

Appellant contends the commissioner has not suspended the license of others when he should have and therefore it was erroneous for him to suspend appellant's license. This reasoning is *a non sequitur:* First, the facts are not shown to be the same; indeed the record shows they were substantially different. The courts have repeatedly exposed the fallacy of this proposition; because one jury acquits a person who should be convicted is no reason to discharge another who under similar or even identical circumstances in another action has been convicted. Verdicts acquitting one and convicting another where both are jointly charged, with the same evidence introduced as to both, have been sustained, *State v. Jackett,* 45 Ida. 720, 264 Pac. 875; 15 C. J. 1104, sec. 2591, as is likewise true in civil cases. (*Strickfaden v. Greencreek Highway·Dist.,* 42 Ida. 738, at 767, 248 Pac. 456, 49 A. L. R. 1057; *Gunnell v. Largilliere Co.,* 46 Ida. 551, at 559, 269 Pac. 412; *Judd v. Oregon Short Line R. R. Co.,* 55 Ida. 461, at 478, 44 Pac. (2d) 291.) Secondly, that the commissioner should have proceeded against others, but has not done so, does not exculpate appellant. (*Kootenai County v. Seven-Seven Co.,* 32 Ida. 301, 182 Pac. 529.)

While the suspension of a license is not a criminal proceeding, appellant asserts it is penal in nature and certainly a rule applicable in criminal proceedings is applicable herein. (*Glass v. State Board of Public Roads,* 44 R. I. 54, 115 Atl. 244, at 245, 246; *Klein v. City of Cincinnati, supra; Capitol Taxicab Co. v. Cermak, supra; People v. Harnett, supra; Watson v. State Division of Motor Vehicles, supra.*)

The commissioner testified suspension followed an adverse verdict of the coroner's jury. This does not make such action arbitrary or discriminatory; the essential question being of course, not whether the verdict of the coroner's jury was properly found or conclusive, but whether in the particular

case and on review before the commissioner, to which everyone upon application is entitled, the showing of negligence, though slight, was sufficient to justify the suspension.

Aside from appellant's contention that the acquittal of the manslaughter charge absolved him from all blame, hereafter disposed of, and that the commissioner arbitrarily discriminated against him and in favor of others, untenable as shown above, he does not question the sufficiency of the showing before the commissioner authorizing his original order of suspension, hence it is unnecessary to further consider it.

*Thompson v. Smith*, 155 Va. 367, 154 S. E. 579, 71 A. L. R. 604, largely relied upon by appellant has been followed as to what he contends are its pertinent points only in the dissent in *In re Probasco, supra*, at page 864, and the annotations in 71 A. L. R. 616, 108 A. L. R. 1162, show that it has not otherwise been followed.

Appellant also contends the acquittal in the manslaughter proceeding was an absolute and complete finding that he was not guilty of any wrongdoing, the basis of the proceeding herein. The majority rule is directly contrary as shown by the following authorities: *Steele v. State Road Com.*, 116 W. Va. 227, 179 S. E. 810; *Commonwealth v. Funk, supra;* notes, 31 A. L. R. 262; 57 A. L. R. 504; 80 A. L. R. 1145.

Appellant contends he has been denied due process because the commissioner is given power to suspend first without a hearing and that the second hearing is before one who assumes the dual role of prosecutor and judge, and hence is a biased tribunal, relying on *Abrams v. Jones*, 35 Ida. 532, 207 Pac. 724. This portion of the statute (section 30 (b) is taken *verbatim* from the Uniform Act which has been adopted by the states listed below.[1] Not only has similar procedure been followed in this state in situations cited in note one on

[1](Uniform Motor Vehicle Operators' and Chauffeurs' License Act, vol. 9, Uniform Laws Annotated, page 320; Colorado, Laws 1931, chap. 122, effective Jan. 1, 1932; Delaware, Laws 1929, chap. 10, arts. I and IV, effective April 8, 1929; Indiana, Laws 1929, chap. 162, effective July 1, 1929; Iowa, Laws 1931, chap. 114, effective Jan. 1, 1932; Kansas, Laws 1931, chap. 80, effective June 30, 1931, Michigan, Laws 1931, No. 91, effective May 1, 1931, Oregon, Laws 1931, chap. 264, effective July 1, 1931.)

page 507 herein, but has been in effect approved in other courts construing this or similar statutes. (*Tanguay v. State Board of Public Roads,* 46 R. I. 134, 125 Atl. 293; *People v. Noggle,* 7 Cal. App. (2d) 14, 45 Pac. (2d) 430; *In re Probasco, supra; Commonwealth v. Funk, supra; People v. Harnett, supra; People v. Stryker,* 124 Misc. 1, 206 N. Y. Supp. 146.)

While the Abrams case, *supra,* is not referred to the point is referred to and in effect construed justifying the conclusion that appellant was not prejudiced by the hearing before the commissioner with later an opportunity for review before the probate court and such further legal action as might be taken:

''Petitioner insists that under the statutes involved herein a hearing before an impartial body is not provided for, and for that reason the statutes are in contravention of the foregoing constitutional provision and should not be upheld. Under the provisions of the acts here involved, the committee appointed to investigate can merely report its findings to the board, whereupon a trial committee may be appointed. Before both committees a full and complete hearing may be had, said committees acting in capacities similar to referees, reporting their findings and conclusions to the board, before which latter body a full and complete review is provided for, with a right of review of its findings, conclusions and recommendations in the supreme court, where a still further hearing is provided for.'' (*In re Edwards,* 45 Ida. 676, 266 Pac. 665, at 689, 690.)

Since the Abrams case, *supra,* this court has approved a situation similar with the case at bar in *Chambers v. McCollum, supra:*

'' . . . . The legislature had delegated to the State Forestry authority to determine the facts in this regard, and while the act does not expressly provide for a hearing upon this question in any court of competent jurisdiction, a forest land owner is not deprived of access to the courts under the ordinary constitutional guaranties of due process, for the purpose of having determined the question of whether the protection, if furnished by him, is adequate and efficient, or equal in standard, efficiency and seasonal duration to that of

those who, in compliance with the law and the regulations of the board, are, in good faith maintaining organized protection of their lands against fire in the same forest protective district. . . . . ''

Court action is not necessary to give due process. (*Chambers v. McCollum, supra; Stark v. McLaughlin*, 45 Ida. 112, 261 Pac. 244; *Bell v. City of Moscow*, 48 Ida. 65, at 68, 279 Pac. 1095.)

Conceding that the review in the probate court is not *judicial process* because the probate court, as such, does not have jurisdiction, due process is afforded by resort to special writ by the district court, or by injunction to restrain the enforcement of the statute as in *Garrett Transfer etc. Co. v. Pfost, supra:*

" . . . . Furthermore, by using existing local machinery, the Legislature was attempting to provide a convenient method of hearing for the individual without the added expense to the state of setting up new boards or machinery.'' (*In re Probasco, supra.*)

See also: *Bueneman v. City of Santa Barbara*, 8 Cal. (2d) 405, 65 Pac. (2d) 884, 109 A. L. R. 895; *Bueneman v. City of Santa Barbara*, (Cal.) 59 Pac. (2d) 998; *People v. Harnett, supra; People v. Cohen*, 128 Misc. 29, 217 N. Y. Supp. 726; *Commonwealth v. Funk, supra; National Cab Co. v. Kunze*, 182 Minn. 152, 233 N. W. 838; *Klein v. City of Cincinnati, supra; Capitol Taxicab Co. v. Cermak, supra.*

The judgment should be affirmed.

Morgan, J., concurs in this dissent.